Lynn W. NUNEZ, wife of/and Elden
L. NUNEZ, Jr.

v.

**LOUISIANA BENEFIT COMMITTEE
and/or Employees Benefit Committee
of South Central Bell Telephone Com-
pany and ABC Insurance Company.**

Civ. A. No. 87-5769.

United States District Court,
E.D. Louisiana.

Feb. 28, 1991.

Fernand L. Laudumiey, III, New Or-
leans, La., for plaintiff.

Wayne T. McGaw, South Cent. Bell Tele-
phone Co., New Orleans, La., for defen-
dants.

## ORDER AND REASONS

LIVAUDAIS, District Judge.

The defendant, the Sickness and Acci-
dent Disability Benefit Plan of South Cen-
tral Bell Telephone Company ("South Cen-
tral Bell"), has filed a motion for summary
judgment on the basis that there are no
material issues of fact in dispute and that it
is entitled to judgment as a matter of law
under Federal Rule of Civil Procedure 56.
Plaintiffs Lynn W. and Elden Nunez have
filed a cross-motion for summary judg-
ment. In the event the Court denies both
motions for summary judgment, the defen-
dant has filed a motion in limine to exclude
all live testimony and any documents which
the Plan Administrator did not review at
the time of its decision. In reviewing the
motion, the Court has reviewed the entire
record, including the excellent memoranda
of counsel and the multiple attachments
thereto.

At issue is whether the plaintiff is entitled to continued disability benefits under her employee sponsored sickness and disability plan. It has been stipulated by the parties that the plaintiff's claim falls under the purview of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B).

## I.

Plaintiff Lynn Nunez ("Mrs. Nunez") began her employment with South Central Bell on January 16, 1965. She worked for South Central Bell until January 27, 1986, a period of 21 years, before being placed on sick leave, then disability. Her job position was that of service representative. Prior to that date, Mrs. Nunez had 4 previous sick leaves of more than 7 days duration in her entire 21 years of employment, one in 1969 for an acute lumbar disk, one of 21 days duration in 1971 for acute low back strain, and two related absences of 12 and 14 days duration for a threatened miscarriage and a miscarriage in 1972. From 1972 to 1986, she had no extended periods of sick leave.

South Central Bell has established and administers a Sickness and Accident Disability Plan ("the Plan") for its employees. The Plan is administered and maintained pursuant to ERISA. It provides for payment of specified amounts for employees who become disabled and it is the only means by which the employee has to recover disability benefits from South Central Bell. The South Central Bell Employees Benefit Review Committee ("Benefit Review Committee"), which is appointed by South Central Bell, makes decisions regarding employees' claims for benefits under the Plan. Exhibit A to Rec.Doc. No. 7. South Central Bell ("The Company" or "the employer") is the Plan Administrator and Sponsor of the Plan and appoints "not less than three or more than seven persons" to serve on the Benefit Review Committee. Exhibit A, Rec.Doc. No. 7, p. 6. The composition of the Benefit Review Committee, i.e., whether there are any employee representative members on the Committee, is unclear. The Company relies on the opinions of orthopedic consultants it engages on three levels, a "state" consultant for those employees working within the state of Louisiana, and a company consultant based in Birmingham, Alabama, who review the reports of the consultant it hires locally to perform the actual physical examination of the employee claiming benefits, as well as a local consultant. Exhibit A and Exhibit B, Rec.Doc. No. 7.

Mrs. Nunez filed a claim for disability benefits due to degenerative disc disease under the Plan for an absence beginning on January 27, 1986. The Company hired an orthopedic consultant, Dr. A.N. Diodene, Jr., to provide an opinion as to whether Mrs. Nunez was disabled. On March 7, 1986, Dr. Diodene reported to Dr. Theodore J. Borgman, the state physician consultant to the Company, that he found, based on a physical examination and x-rays of the lumbar region, that Mrs. Nunez suffered from severe degenerative disc disease. He further opined that "she will have difficulty even with working at a sedentary form of work. She is disabled and should definitely avoid any strenuous physical activities.... It is quite probable that she will be a candidate for a surgical fusion at some time in the future." Exhibit C to Rec.Doc. No. 37.

Mrs. Nunez was visited by company supervisors on several occasions during the period when she was receiving benefits. The Benefits Review Committee reviewed the notes of the various supervisors who visited Mrs. Nunez. The supervisor who visited Mrs. Nunez on February 13, 1986 noted that she did not look well, was in bed clothes, and remained seated throughout the visit. The supervisor who visited her on May 9, 1986 noted that Mrs. Nunez "did not look well", "seemed very depressed and her voice sounded like she was ready to cry," and that she was stiff and related being in a great deal of pain. On July 10, 1986, a fellow employee reported to a supervisor that she has seen Mrs. Nunez in a store and that she looked good. A supervisor visited her again on July 18, 1986, noting that she was not home when the supervisor arrived because she was picking up her son from swimming lessons, that

she seemed nervous and that her house was unkept. The supervisor also noted that she looked good, but "did hold her back straight and seemed a little stiff." The state medical consultant then advised the committee to have Mrs. Nunez re-examined.

Dr. Diodene re-examined Mrs. Nunez on August 13, 1986, reporting as follows, in pertinent part:

On the date of evaluation, she complained of pain in her upper back as well as her lower back. She notes difficulty with sitting or standing for long periods of time. She indicates that she works as a service representative and that she has to remain in one position for prolonged periods.

In my opinion, the patient's symptoms are related to the degenerated lumbosacral disc noted at the time of her previous visit. She, however, presents an improved clinical condition and that she has better motion and better flexibility on today's examination. In my opinion, she is capable of returning to work but is not capable of sitting in one position for prolonged periods. Rather, she should be allowed to get up and move about periodically changing her position thereby relieving her discomfort.

Exhibit, Rec.Doc. No. 7. Dr. Diodene does not indicate that he either received or reviewed a job description detailing the duties of a service representative, reviewed additional x-rays, or ordered any objective diagnostic studies, such as a CT-scan or an MRI.

The State Medical Consultant, Dr. Borgman, then forwarded the report to the company consultant, Dr. Randall, who agreed with the report. Neither Dr. Borgman nor Dr. Randall have physically examined Mrs. Nunez at any time, nor have they reviewed the actual x-rays or the CT scan of Mrs. Nunez. Based upon Dr. Diodene's report of August 13, 1986, their consultant, as well as the state and company medical consultants, the Company terminated her benefits on September 5, 1986. According to company records, the company advised Mrs. Nunez as follows:

The MBR advised Ms. Nunez that the report of the Company exam has been reviewed by the State Medical Consultant and the Orthopedic Consultant in Birmingham and both agreed she should be able to return to sedentary work provided she be allowed to get up and move about periodically. The MBR advised Ms. Nunez restrictions can be accommodated; therefore, sickness disability benefits could be authorized through [9–4–96] only. Ms. Nunez advised she would really have a problem returning since it takes her approximately 2 hours some mornings to get moving and be able to walk normally. Ms. Nunez also advised she cannot ride for long distances. (She lives approximately 35 miles from work location.) The MBR advised Ms. Nunez benefits cannot be approved because of any problems she may have getting to and from her work location. Ms. Nunez asked if there was a job available in her area. The MBR advised she did not know but that the Benefit Office would not be involved in a transfer or change in job location process. The MBR advised Ms. Nunez she was found able to perform her normal job duties; therefore, she would be expected to return to present location and apply for transfer, if she decides she wants a different work location.

Exhibit C, p. 10 of 22, Rec.Doc. No. 7.

Mrs. Nunez was examined by Dr. Charles Krieger, Jr. and by Dr. George A. Murphy, and she submitted their reports to the Benefits Review Committee in support of her claim for disability benefits. By medical report dated September 22, 1986, Dr. Krieger found, based upon his physical examination, X-rays which he performed, and a CT-scan which was performed on September 15, 1986, that Mrs. Nunez has "symptomatic degenerative disc disease of the lumbosacral spine" and that she was "unable to return to work for an undetermined period of time." He also found that it was possible "that surgical treatment may be indicated in the near future." Exhibit F to Rec.Doc. No. 37. Dr. George Murphy, an orthopedic surgeon, determined in his report of November 25, 1986,

that Mrs. Nunez had "evidence of lumbar disc herniation with nerve root impingement." Exhibit G to Rec.Doc. No. 37.

Mrs. Nunez submitted these reports to the Benefit Review Committee. The company's state medical consultant advised the Committee that Dr. Krieger's report was reviewed and that it should be sent to Dr. Randall, the company consultant in Birmingham for review, but "from a management point of view feel that we should go with our own consultant and that is Dr. Diodene. I would not release benefits based on Dr. Diodene's report." Exhibit C, p. 13 of 22, Rec.Doc. No. 7. Dr. Randall reviewed Dr. Krieger's report and advised the Committee that he agreed with Dr. Diodene's report.

Mrs. Nunez was advised that her disability benefits were denied. She sent a claim requesting additional benefits. The Benefit Committee reviewed her claim at its November 13, 1986 meeting and accepted Dr. Diodene's opinion over Dr. Krieger's. Mrs. Nunez appealed and submitted Dr. Murphy's opinion as well as updated opinions from Dr. Krieger that she continued to be disabled.

Dr. Walter Abbott, Jr. performed an independent medical examination on Mrs. Nunez for the Social Security Administration to determine if she was disabled in accordance with Social Security laws. Dr. Abbott reviewed the CT-scan ordered by Dr. Krieger in September, 1986 as well as x-rays of the cervical and lumbar spine. He found that Mrs. Nunez suffered a "chronic lumbar disk disease problems associated with moderately severe osteoarthritic changes at the L–5 level." He also found that she probably was a candidate for surgery. Exhibit M to Rec.Doc. No. 37. On June 11, 1987, the Benefits Review Committee met once again and reviewed Mrs. Nunez claim. Once again, they denied her benefits. She had previously been terminated by the company for "job aban-

donment." Exhibit N to Rec.Doc. No. 37. Mrs. Nunez filed suit in December, 1987.

On May 3, 1988, the defendant filed its first motion for summary judgment. Upon consideration, this Court remanded this action to the plan committee for further review for the following reasons:

There appears to be a genuine issue as to the material fact of plaintiff's physical condition inasmuch as a CT scan and certain X-rays taken after Dr. Diodene's August 21, 1986 examination were not considered and/or evaluated, nor was the Social Security medical evaluation considered. Additionally, though not considered since this is not a *de novo* review, evidence of plaintiff's phychological [sic] function is noted.

Rec.Doc. No. 17, June 23, 1988.

The Plan Committee then reviewed the Social Security evaluation by Dr. Walter Abbott of January 6, 1987 and Dr. Diodene's findings of October 20, 1989 of his review of Dr. Krieger's report dated September 22, 1986, Dr. Murphy's letter dated November 25, 1986, and Dr. Abbott's report of January 6, 1987. Dr. Diodene does not state in his October 20, 1989 letter that he reviewed the CT scan films or the X-ray films themselves, that he examined Mrs. Nunez, or that he reviewed any of the psychological reports from the various examiners, who uniformly found that she was an achievement oriented individual and not in any way a malingerer.[1]

Further, Dr. Diodene's second report reflects an absence of knowledge of the physical requirements of Mrs. Nunez' job. Mrs. Nunez's affidavit states that her job as a service representative required her to sit for 8 hours per day in front of a computer and answer service calls from customers. The job was sedentary, but required extended periods of sitting and assisting the public in a pleasant manner. Dr. Diodene imposed the restriction that she could not

---

1. Mrs. Nunez was evaluated by a psychologist, Gerald Wiener, Ph.D., who reported on October 30, 1987 and December 14, 1987, that Mrs. Nunez was severely depressed and that he did not find in any way that she was a malingerer. He found that one of the likely reasons for her depression was that she was an achievement oriented individual who was unable to work because of her severe pain and that this caused her great anger and guilt. Exhibits J and K to Rec.Doc. No. 37.

be made "to sit in one position for any length of time." (emphasis added). It is unclear whether Dr. Diodene's restrictions include sitting for 5 minutes, 30 minutes or 1 hour at a time, and if the alternate period of work could include filing, which requires bending and stooping, walking any distance, standing. It is obvious from the job description provided by Mrs. Nunez that even Dr. Diodene opined that she could not be a service representative since that job involved sitting for prolonged periods. Exhibit E to Rec.Doc. No. 7. However, when Mrs. Nunez requested a different position, she was advised by the South Central Bell company representative that Dr. Diodene did find that she could perform her normal job duties as a service representative and that she would have to return to her service representative job. She was never offered a different position or told that she would be considered for benefits if she did return to her service representative position and could not physically perform the job. Exhibit C, p. 10 of 22, Rec.Doc. No. 7.

The Court ordered the Benefits Review Committee to review the CT-scan taken in September, 1986 as well as the X-rays taken by Dr. Krieger and Dr. Murphy after Dr. Diodene's August, 1986 report. The Court also ordered the Committee to consider the Social Security medical evaluation and to take note of the plaintiff's psychological function. The record reveals that neither the Benefits Review Committee, Dr. Diodene, Dr. Borgmann (the company's state medical consultant), nor Dr. Randall (the company medical consultant in Birmingham) reviewed the CT-scan, the x-rays, the Social Security medical evaluation or the psychological evaluations. Certainly the CT-scans, x-rays, and Social Security evaluation were completed prior to the final review of the Committee denying the claim in June, 1987. Further, the company supervisors themselves were aware that Mrs. Nunez was depressed prior to the termination of her benefits in September, 1986.

The Court remanded the matter to the Benefits Review Committee on June 23, 1988. No action was taken by the Committee until October 13, 1989, over 1¼ years later, when the defendant sent the reports of Dr. Krieger, Dr. Murphy, and Dr. Abbott to Dr. Diodene. On October 20, 1989, one week later, Dr. Diodene replied that his review of the reports did not change his opinion that Mrs. Nunez could return to work "provided she is not made to sit in one position for any length of time." Exhibit to Rec.Doc. No. 27. The Committee then reviewed the claim on June 13, 1990, over 6 months later, and affirmed its previous decision. The Secretary of the Benefits Review Committee in her affidavit stated that "[i]n cases where the Company Orthopedist, the State Medical Consultant, and the Orthopedic Consultant concur that an employee is no longer disabled by sickness, and there is no countervailing evidence, disability benefits are uniformly terminated." Exhibit to Rec.Doc. No. 27. In this matter there is significant countervailing evidence as every physician who physically examined Mrs. Nunez found her to be suffering from severe degenerative disc disease, a candidate for possible surgery, and disabled. Dr. Diodene did change his opinion without explanation six months after his initial examination, but did not find she could perform the duties of a service representative, since he explicitly stated that she could not be made to sit for "any length of time."

The plaintiff filed a motion to re-open based upon this second denial of benefits. The parties then filed cross-motions for summary judgment.

## II.

Both parties have stipulated that ERISA governs this action inasmuch it is a claim for benefits by a participant in an employee welfare plan established by the defendant for its employees. ERISA comprehensively regulates employee welfare benefit plans that provide benefits in the event of sickness or disability and it preempts state laws regulating the processing of claims for benefits under ERISA-regulated benefit plans. 29 U.S.C. § 1001(b); *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 44, 57, 107 S.Ct. 1549, 1551, 1558, 95 L.Ed.2d 39 (1987). Under ERISA, a participant in an employee benefit plan may bring a civil

action to recover benefits due him under the plan. 29 U.S.C. § 1132(a)(1)(B).

ERISA authorizes employers to establish employee welfare benefit plans and requires that they be established and maintained by written instruments. The statute also requires that the instrument creating the plan provide for "one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). ERISA further provides that:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matter would use in the conduct of an enterprise of a like character and with like aims.

29 U.S.C. § 1104.

ERISA is silent as to proper standard for a court to apply in reviewing a denial of benefits by the administrator or fiduciary of a plan. The Supreme Court has recently addressed this question in *Firestone Tire and Rubber Company v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Recognizing that ERISA "was enacted 'to promote the interests of employees and their beneficiaries in employee benefit plans,' *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896 [77 L.Ed.2d 490] (1983), and 'to protect contractually defined benefits,' *Massachusetts Mutual Life Ins. Co.* [*v. Russell*], 473 U.S. [134], at 148, 105 S.Ct. [3085], at 3093 [87 L.Ed.2d 96 (1985) ]", the Court held, in pertinent part:

Consistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard

unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.... Thus, for purposes of actions under § 1132(a)(1)(B), the *de novo* standard of review applies regardless of whether the plan at issue is funded or unfunded and regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest. Of course, if a benefit plan gives discretion to an administrator or fiduciary who is acting under a conflict of interest, that conflict must be weighed as a 'factor[ ] in determining whether there is an abuse of discretion.'

109 S.Ct. at 956.

■ Thus, the initial determination to be reached is whether the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits, and secondly, if it does give discretionary authority, whether the administrator or fiduciary is operating under a conflict of interest. The plan must give the administrator the discretionary power to determine eligibility for benefits *"in specific words"* in the terms of the trust in order to escape *de novo* review. *Restatement (Second) of Trusts* (1959) § 186; Ostrich, *ERISA Litigation: What to do about Standard of Review*, Louisiana Bar Journal (Feb. 1991).

If in fact the language of the plan does grant specific discretionary authority to the administrator, then the Court may review the decision only if it finds that there has been an abuse of discretion. *Bruch*, 109 S.Ct. at 956; *Lowry v. Bankers Life and Casualty Retirement Plan*, 871 F.2d 522, 524 (5th Cir.1989); *Batchelor v. International Brotherhood of Electrical Workers Local 861 Pension and Retirement Fund*, 877 F.2d 441, 442 n. 10 (5th Cir.1989). South Central Bell argues that this Court should apply an arbitrary and capricious standard which, it contends, would require this Court to affirm the Administrator's decision so long as there is "some evidence" to support it. A careful study of *Bruch* as well as the cases construing it do not support this argument.

The proper standard of review of the decision of an administrator who has been granted specific discretionary authority to determine eligibility for benefits is *abuse of discretion.* No Fifth Circuit decision discovered by this Court construes the term *abuse of discretion* as requiring the court to affirm an administrator's decision so long as there is "some evidence" to support it. Indeed to do so would be tantamount to a "license to steal" inasmuch as an administrator could ignore 100 opinions to the contrary so long as he is able to hire one physician consultant who agrees with the employer. The case which the defendant cites in support of this "some evidence" test, *Offutt v. Prudential Insurance Co.,* 735 F.2d 948, 950 (5th Cir.1984) pre-dates *Bruch,* nowhere adopts the "some evidence" approach, and applies the "arbitrary and capricious" standard which the Fifth Circuit has rejected in its post-*Bruch* decisions in favor of an abuse of discretion standard. *See Batchelor,* 877 F.2d at 442 n. 10; *Jordan v. Cameron Iron Works, Inc.,* 900 F.2d 53, 55 (5th Cir.1990). While in many cases applying an *abuse of discretion* standard may obtain identical results as would an *arbitrary and capricious* standard, this Court finds that the standards are not identical.

The *Bruch* Court explicitly rejected the arbitrary and capricious standard of review even for a plan which specifically grants the Administrator discretion to decide eligibility for benefits. In doing so, the Court recognized that while many of the provisions of the Labor Management Relations Act (LMRA) have been construed to apply to ERISA actions as well because both statutes impose a duty of loyalty on fiduciaries and plan administrators, "the *wholesale* importation of the arbitrary and capricious standard into ERISA is unwarranted." 109 S.Ct. at 953. Keeping in mind the purpose for which ERISA was enacted, i.e. " 'to promote the interests of employees and their beneficiaries in employee benefit plans [citation omitted]' and 'to protect contractually defined benefits' ", Justice O'Connor for a unanimous Court held that the proper standard of review is *de novo,* unless the plan grants specific discretionary authority to an administrator or fiduciary to determine eligibility for benefits. If the plan does give such discretion, then the proper standard is abuse of discretion. Such a standard is akin to the standard of review of an appellate court reviewing the decision of a district judge in determining the admissibility of evidence at trial. While the discretion of the trial judge is broad, the determination of admissibility is reviewable by an appellate court to determine if the decision was "manifestly erroneous." *In re Air Crash Disaster at New Orleans,* 795 F.2d 1230, 1233 (5th Cir.1986). While certainly there may be "some evidence" which supports the district judge's ruling, the appellate court may reverse if it determines that the judge was manifestly erroneous. This Court finds that applying the "manifest error" test in reviewing the administrator's decision under the abuse of discretion standard more accurately complies with the dictates of ERISA and the Supreme Court's decision in *Bruch.*

### III.

The relevant language in the Sickness and Accident Disability Benefit Plan for South Central Bell Telephone Company, with Amendments Effective January 1, 1984, provides in pertinent part:

Section 3. Administration.

4. The Employees' Benefit Committee, or the Review Committee when it reviews a denial of a claim, or the State Benefit Committee when there is no review of any of its determination, shall determine conclusively for all parties all questions arising in the administration of the Plan, and any decision of such Committee shall not be subject to further review.

Section 6. General Provisions

3. *Determination of Eligibility.* In all questions relating to eligibility to become a participant, or relating to term of employment and rates of pay for determining benefits, the decision of the Committee, based upon the terms of the Plan

and upon the records of the Company, shall be final.

Exhibit A to Rec.Doc. No. 7.

██ South Central Bell contends that this language grants specific discretionary authority to determine whether or not a participant is eligible for disability benefits. In support of this argument, the defendant maintains that the Fifth Circuit has held "the nearly identical language" to vest the necessary discretion in plan administrators, citing *Batchelor,* 877 F.2d at 443 and *Lowry,* 871 F.2d at 524. The relevant language in the Plan at issue in *Batchelor* provided that:

> [T]he Trustees 'have full and exclusive authority to determine all questions of coverage and eligibility.... They ... have full power to construe the provisions of this Agreement, [and] the terms used herein....' Furthermore, the Trustees have the authority to 'interpret the Plan and ... determine all questions arising in the administration, interpretation and application of the Plan.'

877 F.2d at 443. The relevant language in the Bankers Life Savings Plan at issue in *Lowry* granted:

> [P]ermissive authority to the Plan Committee to 'interpret and construe' the Savings Plan and the power 'to determine all questions of eligibility and status under the Plan.' The Bankers Life Retirement Plan grants to the Plan Committee the power to 'determine all questions arising' in the administration of the Plan, 'including the power to determine the rights or eligibility of Employees and Participants and their beneficiaries, and the amounts of their respective interests.' Both Plans provide that Committee determinations are binding on all persons, subject to the claims procedures under the Plans by which the Committee decides appeals from claims denials.

871 F.2d at 524.

The courts in both *Batchelor* and *Lowry* found that the plans specifically mandated deference to the Plan Committee's determination because the Plan gave discretionary authority to the fiduciary. Upon reviewing the provisions quoted above, it is not diffi-

cult to glean the reason for this finding since the provisions specifically state that the fiduciary's decision "with respect to eligibility for benefits" would be final. It is also not difficult to notice that the language in the South Central Bell Employee Benefit Plan *sub judice* is far from identical to the quoted language in *Batchelor* and *Lowry.* The language in Section 3 of the Employee Benefit Plan, given its plain meaning, simply provides for separate levels of review of denials of a claim. The language in Section 6 of the employee benefit plan, given its plain meaning, provides that the decision of the Benefit Review Committee is final "[i]n all questions relating to eligibility to become a participant, or relating to term of employment and rates of pay for determining benefits."

The *Bruch* Court construed the term participant as meaning either " 'employees in, or reasonably expected to be in, currently covered employment,' ". *Bruch,* 109 S.Ct. at 958, *quoting Saladino v. I.L.G.W.U. National Retirement Fund,* 754 F.2d 473, 476 (2d Cir.1985). There is no dispute that, as a 21-year employee of South Central Bell, Mrs. Nunez was a participant in the plan. There is also no dispute regarding her *term of employment* or *rate of pay* which are factors in determining the amount of the disability pay. The plan language does not, in general terms or in specific terms, grant the administrator's discretion in determining whether the claimant is eligible to receive disability benefits by reason of sickness. Thus, by the dictates of *Bruch* and the principles of trust law, the plan does not grant the fiduciary the broad discretion in specific language to determine eligibility for benefits. *See Restatement (Second) of Trusts* (1959) § 186. The *de novo* standard of review is therefore warranted.

In order to avoid re-trial in the event of reversal on appeal on this issue, however, this Court shall review the decision under both the abuse of discretion and the *de novo* standards.

## IV.

Based upon the record, the Court finds, as both parties in essence agree, that there

are no material issues in dispute and that judgment should be entered as a matter of law. Rule 56(c) of the Federal Rules of Civil Procedure. Under an abuse of discretion standard of review, the decision of the Plan Committee is accorded deference and should be reversed only upon a finding that it was "manifestly erroneous", i.e., when the reviewing court finds that there has been a clear error in judgment. *See, e.g., Rodriguez v. Olin Corp.*, 780 F.2d 491, 494 (5th Cir.1986). *Bruch* stated that a conflict of interest in the Benefits Review Committee is a factor that could be considered in determining whether there was an abuse of discretion. It is clear that the Company appoints all of the members of the Benefits Review Committee. It is not clear whether there are any employee representatives on the Committee. If there are any employee representatives, they are selected by the Company. There is no evidence in the record regarding who was on the Committee that decided Mrs. Nunez' claim.

The Company terminated Mrs. Nunez's benefits based upon the a second opinion of Dr. Diodene, the Company retained consultant, that she "was capable of returning to work but is not capable of sitting in one position for prolonged periods. Rather, she should be allowed to get up and move about periodically changing her position thereby relieving her discomfort." Exhibit dated August 21, 1986 to Rec.Doc. No. 7. Five months earlier, in March of 1986, Dr. Diodene found that Mrs. Nunez was disabled from working even at a sedentary job based upon his physical examination and x-rays, which are objective tests, indicating that she was suffering from severe degenerative disc disease. He further remarked that she was a possible candidate for surgery. After his August examination he found she had improved, but he did not take any additional x-rays. On remand, he merely reviewed the reports of the other physicians who found she was disabled; he did not review the x-rays themselves, or the CT-scan which was performed in September, 1986 to determine if there were any objective signs of the progress of the degenerative disc disease.

He also found that she could return to work provided she not be made to sit in one position for any length of time. The uncontradicted testimony of Mrs. Nunez, by affidavit, in the record is that her position required extended periods of sitting before a computer assisting customers in handling service problems with the telephone company. She was expected to be pleasant on the telephone and was required to meet certain quotas. While the Company contends that these restrictions could be accommodated, it offered no explanation as to how Mrs. Nunez could be accommodated since she basically could not sit for more than a few minutes at a time without experiencing significant pain. When the Company representative advised her that her sickness benefits were being terminated and that she would have to return to work, Mrs. Nunez asked if she could be transferred. The Company representative advised her that she was determined to be able to perform her normal job requirements. Dr. Diodene did not find her able to perform her normal job requirements since she was not able to sit for any length of time.

The Benefits Review Committee chose to accept the second opinion of Dr. Diodene over that of the three other physicians whose opinions were submitted, including that of a Social Security Disability Examiner, because, it stated, that her activities validated the fact that she could return to work. What it referred to was the fact that on one occasion she was observed to be visiting a supermarket and on another occasion she drove to the bank and to pick up her son from swimming lessons. The Committee did not request or require that any vocational studies be done to determine whether in fact Mrs. Nunez could perform her job duties, which were significantly different from those she was observed to be doing. Nor did the Committee consider the objective evidence of her degenerative disc disease, which this Court observes is different from a transitory sprain or strain of the lumbar muscles. Mrs. Nunez' condition was of long-standing origin and was diagnosed by x-ray and CT-scan. Neither Dr. Diodene nor the other two physician consultants to South Central Bell ever re-

viewed the x-rays or the CT-scan which was performed in September, 1986, that the Court remanded the case to the Committee for the purpose of reviewing.

 Based upon the record, the evidence, and the law, the Court finds that the Committee abused its discretion in denying Mrs. Nunez' claim for disability benefits. The Committee did not consider the objective evidence of Mrs. Nunez' degenerative disc disease and accepted the opinion of its company consultant that she could return to work with significant physical restrictions which were completely incompatible with the physical demands of her job. The Committee did not give any consideration to the opinions of the three other physicians who relied on objective tests on which to base their finding of disability, including two physicians who Mrs. Nunez consulted after she was denied benefits and an independently selected Social Security examiner. Upon remand, the Committee did not even consider the evidence which the Court ordered it to consider.[2] The Court also notes that the physician consultants who rendered opinions to the Committee, and whose opinions are given deference by the Committee, are hired by South Central Bell management, not by the Committee. It is also clear from the notes of the Benefit Review Committee that the state medical consultant and the company medical consultant take a management point of view in reviewing the physician's opinions. *See* Notes of Benefit Committee, Exhibit C to Rec.Doc. No. 7, ("Reviewed by Dr. Borgman: 'The report that we received from Dr. Krieger was reviewed. I think it is appropriate since we do have this report to have Dr. Randall review it, but from a management point of view feel that we should go with our own consultant and that is Dr. Diodene. I would not release benefits based on Dr. Diodene's report.' ") Given the purpose of the ERISA statute of promoting the interests of employees in employee benefit plans and protecting their contractually defined benefits, and considering all the evidence submitted to it regarding Mrs. Nunez' claim for disability benefits, the Benefits Review Committee committed manifest error in denying her claim.[3] Accordingly, the plaintiff's motion for summary judgment shall be granted and the defendant's motion for summary judgment shall be denied. The defendant's motion in limine regarding evidence to be submitted at trial is moot.

For the above and foregoing reasons,

IT IS ORDERED that the motion of plaintiff, Lynn Nunez, for summary judgment be and is hereby GRANTED;

IT IS FURTHER ORDERED that the motion of defendant, the Sickness and Accident Disability Benefit Plan of South Cen-

2. While it is not explicitly an issue herein, the Court also notes that the Benefits Review Committee did not provide a full and fair review of the claim upon remand within a reasonable amount of time. The matter was remanded to the Committee on June 22, 1988. The Committee's compliance with the Court's order remanding the action consisted of sending copies of this Court's order and the opinions of Dr. Krieger, Dr. Murphy, and Dr. Abbott, to Dr. Diodene on October 13, 1989, almost 16 months later, with a request for an opinion prior to a Committee meeting scheduled on July 13, 1989. Dr. Diodene replied within one week to the Company that his review of these reports did not change his opinion that she was capable of returning to work "provided she is not made to sit in one position for any length of time." Dr. Diodene specifically did not review the x-rays or the CT-scans done in September, 1986. There is no explanation by the Committee for the lengthy delay prior to its sending the request to Dr. Diodene or for the lengthy delay between the receipt of Dr. Diodene's letter and the Committee meeting.

3. Using a *de novo* standard of review, the Court reaches the conclusion that Mrs. Nunez is entitled to disability benefits. The objective testing done by Dr. Diodene, Dr. Krieger, Dr. Murphy, and Dr. Abbott all reflect that Mrs. Nunez suffers from severe degenerative disc disease. One of the characteristics of this disease, according to Dr. Diodene, is that Mrs. Nunez suffers severe pain from sitting. Her position as service representative requires extended sitting over an 8 hour period and further requires that she be pleasant to telephone customers and meet specified quotas in terms of numbers of problems resolved within a period of time. While Mrs. Nunez may have "good days" and be able to tolerate more pain than on other days, it is apparent that she will not be able to meet the physical requirements of her job, considering the degenerative nature of the disease and the pain it causes.

tral Bell Telephone Company, for summary judgment, be and is hereby DENIED;

IT IS FURTHER ORDERED that the motion in limine to exclude all live testimony at trial is MOOT.

The issue of attorney's fees shall be discussed at the pretrial conference scheduled February 28, 1991. The Court is hopeful that the parties can resolve this issue prior to trial.