FRIENDS HOSPITAL, Plaintiff,

v.

METRAHEALTH SERVICE CORP., RCA Plan for Health, and General Electric Company, Defendants.

Civil Action No. 96–8676.

United States District Court, E.D. Pennsylvania.

June 12, 1998.

Sarah O. Rollman, Carnot, Zapor & Klassen, P.C., Rockville, MD, for Plaintiff.

Samuel J. Arena, Jr., Nicholas Deenis, Stradley, Ronon, Stevens & Young, LLP, Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Plaintiff initiated this action against defendants on January 23, 1997 alleging wrongful denial of benefits under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et. seq.* ("ERISA").[1] Plaintiff filed an amended com-

---

1. Section 1132(a)(1)(B) provides that a "civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

plaint on March 17, 1997. Presently before the Court is Defendants' Motion for Summary Judgment and Plaintiff's response thereto. For the following reasons, the Motion is denied.

## BACKGROUND

This case arises out of the hospitalization of Jacqueline Seffren ("Seffren") from January 7, 1992 through November 20, 1992, at Friends Hospital ("Friends Hospital" or "plaintiff") in Philadelphia, Pennsylvania. At the time of Seffren's hospitalization she was a covered beneficiary under the RCA Plan for Health (the "Plan"). This Plan is an employee welfare plan as defined in 29 U.S.C. § 1002(1), and is, therefore, governed by ERISA. Seffren is covered under Part II of the Plan for Medicare eligible individuals. Seffren assigned her benefits under the Plan to plaintiff, Friends Hospital.

Seffren was hospitalized at Friends Hospital on January 7, 1992, for treatment of depression. This was Seffren's eighteenth hospitalization. On all prior occasions, ALTA Health Strategies ("ALTA"), the claims administrator for the Plan, conducted a pre-certification review to determine whether the hospitalization was medically necessary and, thus, covered under the Plan. However, ALTA did not conduct a pre-certification review of the January 7, 1992, hospitalization. Instead, ALTA informed Friends Hospital, as indicated on plaintiff's Insurance Clearance Form, that it was waiving pre-certification and that it would provide 100% coverage if the treatment was medically necessary.

Friends Hospital submitted claims to ALTA on a weekly basis throughout the duration of Seffren's hospitalization. ALTA did not make the reimbursements immediately, however, indicating that it needed additional information to process the claims. On April 15, 1992, ALTA submitted payment to Friends Hospital for the treatment provided from March 9, 1992 through March 22, 1992. This was the only payment received by plaintiff. On September 21, 1992, ALTA, for the first time, indicated that portions of Seffren's treatment from June 22, 1992 through June 28, 1992, would not be covered under the Plan because the admission was not "medically necessary." After this initial rejection, the bills for treatment administered after June 22, 1992, were similarly rejected as not medically necessary. Finally, on November 5, 1992, ALTA sent a letter to Friends Hospital indicating that the entire hospitalization was not covered. On November 11, 1992, plaintiff received another letter from ALTA requesting return of the payment which was disbursed in April of 1992.

In response to plaintiff's challenge of the denial of benefits, MetraHealth Service Corp. ("MetraHealth"), the new claims administrator, agreed to review ALTA's decision to deny coverage. MetraHealth sent the file to be reviewed by Core, Inc. ("Core"), a consulting firm, who, in turn, sent the file to Miriam D. Mazor, M.D. ("Dr. Mazor"), a psychiatrist. Dr. Mazor concluded that the denial of benefits for the entire admission should be upheld because Seffren could have been treated at a lesser level of care (e.g. outpatient therapy in conjunction with in-home services, or at an assisted living facility). Based on this finding, MetraHealth upheld the denial of benefits.

Friends Hospital appealed this decision to MetraHealth. With the appeal, plaintiff submitted to MetraHealth a letter from Seffren's treating psychiatrist, Dr. Ravetz, dated January 18, 1993, two months after Seffren's discharge from Friends Hospital, and a report from another psychiatrist, Bruce A. Kehr, M.D., who reviewed Seffren's file in June of 1996. MetraHealth submitted this new information to Core, who again forwarded the information to Dr. Mazor for her review. Dr. Mazor affirmed her original conclusion that hospital level of care was not medically necessary in Seffren's case. Based on this, United Healthcare (MetraHealth's successor in interest), sent Friends Hospital a letter affirming the denial of benefits.

Subsequently Friends Hospital brought this action.

### I. Summary Judgment Standard

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, reveal no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Our responsibility is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The presence of "a mere scintilla of evidence" in the nonmovant's favor will not avoid summary judgment. *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989)(citing *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505). Rather, we will grant summary judgment unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Id.* at 256, 106 S.Ct. 2505. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1531 (3d Cir.1990)(*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

## II. Standard of Review for Challenges to Denial of Benefits Under ERISA

■ The Supreme Court has held that courts reviewing an employer's denial of benefits under § 1132(a)(1)(B) should use the *de novo* standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). If discretion is given, then the court should utilize the more deferential arbitrary and capricious standard of review. *Id.*

Our Court of Appeals has determined that the grant of discretion can either be express or implied. *See Heasley v. Belden & Blake Corp.,* 2 F.3d 1249, 1254 (3d Cir.1993)(citing *Luby v. Teamsters Health, Welfare & Pen-*

*sion Trust Funds,* 944 F.2d 1176, 1180 (3d Cir.1991)). Further, the grant of express discretion "in one specific area of a plan undermine[s] a claim that the administrator possesse[s] implied discretion in another area of the plan." *Id.* In deciding whether the Plan grants discretion, a court is permitted to look to "other manifestations of the parties' intent" in addition to the terms of the Plan. *Firestone,* 489 U.S. at 113, 109 S.Ct. at 955; *see also Heasley,* 2 F.3d at 1255, n. 5.

Defendants argue for application of the arbitrary and capricious standard based on the language of the Plan. The Plan provides that only "covered services" will be reimbursed. Covered services are defined as:

[t]hose services included in this plan which are reasonable and necessary for the diagnosis or treatment of an illness or injury and which are given at the appropriate level of care. The fact that a procedure or level of care is prescribed by a physician does not mean that it is medically reasonable and necessary or that it is covered by this plan. In determination [sic] the questions of reasonableness and necessity, due consideration will be given to nationally accepted standards, criteria and modes of practice as described in the generally accepted publications, journals and pronouncements of recognized medical specialty societies and other organized authoritative medical groups and as determined by the Professional Policy Committee of the RCA Plan for Health. Services which are not reasonable and necessary shall include, but are not limited to, the following:

. . . . .

— treatment which can be performed with equal efficiency and quality at a lower level of care.

*See* (RCA Plan at 64).

The Plan defines medical necessity as follows:

A health care facility admission, level of care, procedure, service or supply is medically necessary if it is absolutely essential and indispensable for assuring the health and safety of the patient as determined by the RCA Plan for Health with review and

advice of competent medical professionals. The fact that a physician may prescribe, recommend, or approve an admission, level of care, procedure, service or supply does not, of itself, mean that it is medically necessary. For example, a medically unnecessary hospital admission would be one which does not require acute hospital bed patient care and could have been provided in a physician's office, hospital outpatient department or lesser facility without reduction in the quality of care provided and without harm to the patient. An admission primarily for observation or evaluation or diagnostic study which could be provided adequately and safely on an outpatient basis is not medically necessary.

(RCA Plan at 68). Defendants contend that this language evidences an express, or at the very least implied, grant of discretion, which warrants application of the arbitrary and capricious standard of review. *See Heasley*, 2 F.3d at 1254 (discretion can be express or implied in language of the Plan).

Plaintiff argues that, notwithstanding this language, we should apply the *de novo* standard. Plaintiff argues that in order for the arbitrary and capricious standard to apply there must be an express grant of discretion. However, the Third Circuit has held there can be an implied grant of discretion. *See Heasley*, 2 F.3d at 1254 (citing *Luby*, 944 F.2d at 1180).

Plaintiff further argues that the *de novo* standard should be applied since Part I of the Plan, for those individuals who do not qualify for Medicare, expressly grants discretion to pre-certify hospital admissions for medical necessity while Part II of the Plan, for those individuals who do qualify for Medicare,[2] is not subject to pre-admission certification. Plaintiff argues that the express grant in Part I undermines defendants' argument that the implied grant of discretion in the definition of the term "Covered Services" is applicable to Seffren, who is covered under Part II of the Plan. *See Heasley*, 2 F.3d at 1254 (citing *Luby*, 944 F.2d at 1180)(express

grant in one area of plan shows ("that had the drafters intended to grant discretion in another area, 'they knew how to say so and would have expressly done so.'")).

Plaintiff similarly argues that an ambiguity is created by the fact that Part I is subject to pre-admission certification and Part II is exempt from these procedures. Plaintiff argues that this ambiguity should be strictly construed against the drafter, which would warrant application of the *de novo* standard. *See Heasley*, 2 F.3d at 1257–58 (adopting rule of *contra proferentem* in review of denial of insurance benefits under ERISA).

However, we find that the Plan language evidences a clear grant of discretion to the Plan administrator to determine what services are covered under either Part I or Part II of the Plan. *See* (RCA Plan at 64 and 68). The Plan states that covered services are only those that are "medically reasonable and necessary." (RCA Plan at 64). Further, the Plan states that the medical necessity of services rendered will be "determined by the RCA Plan for Health with review and advice of competent medical professionals." (RCA Plan at 68). *See Snell v. Travelers Insurance Co.*, 1993 WL 274240 (E.D.Pa.1993)(language "[a]ll eligibility determinations and benefit payments are made by the Travelers" sufficient to warrant application of arbitrary and capricious standard of review); *see also Sven v. Principal Mutual Life Insurance Co.*, 1996 WL 539109 (N.D.Ill.)(similar definition of medically necessary warranted arbitrary and capricious standard); *Zisel v. Prudential Insurance Company of America*, 845 F.Supp. 949 (E.D.N.Y.1994)(term medically necessary requires discretion); *Mann v. Prudential Insurance Company of America*, 790 F.Supp. 1145 (S.D.Fl.1992)(plan excludes from coverage services that are unnecessary and provides criteria by which Prudential can assess what services and supplies are needed which grants discretion and warrants application of arbitrary and capricious standard); *Westover v. Metropolitan Life Insurance Company*, 771 F.Supp. 1172 (M.D.Fl.1991)(definition of covered services

---

**2.** Defendants argue that since Seffren's Federal Medicare coverage had been exhausted prior to this hospitalization, she was no longer covered under the Medicare portion of the Plan. This

argument is without merit. The only effect of her exhaustion of the Medicare coverage is that now the Plan would become the primary coverage. *See* (RCA Plan at 45).

includes those that are medically necessary which grants discretion sufficient to apply arbitrary and capricious standard).

Moreover, the clear grant of discretion in the Plan is not made ambiguous by the pre-admission review and certification procedure utilized in Part I.

Further, the course of dealing among the parties confirms this intent to give the Plan administrator discretion to determine what services are covered under the Plan. *See Heasley*, 2 F.3d at 1255 n. 5 (quoting *Firestone*, 489 U.S. at 113, 109 S.Ct. at 955)("*Firestone* authorizes a court to look to 'other manifestations of the parties' intent' as well as to the terms of the Plan itself"). By plaintiff's own admission, Friends Hospital was well aware that Seffren's hospital stay would be reviewed for medical necessity. *See* (Pl.'s Mem. at 6 and Pl.'s Suppl. Mem. at 2–3). Seffren had been hospitalized at Friends Hospital on seventeen prior occasions. On each prior occasion, the claims administrator for the Plan reviewed the admission and gave pre-certification for medical necessity. On this occasion, the claims administrator did not pre-certify the admission, but specifically reserved the right to determine the medical necessity of the admission. *See* (Pl.'s Mem. at Ex. 6).

Further, plaintiff admits that when a claim is reviewed for medical necessity under the Plan the arbitrary and capricious standard will apply to a court's review of the denial of benefits. *See* (Pl.'s Mem. at 10). Thus, by plaintiff's own admission, there was no question concerning whether the Plan administrator had discretion to review Seffren's claim for medical necessity and, therefore, no question that the arbitrary and capricious standard would apply to a review of a potential denial of benefits.

■ Finally, plaintiff argues for application of the *de novo* standard of review based on MetraHealth's alleged conflict of interest. Plaintiff argues that MetraHealth has a pecuniary interest in denying coverage because if MetraHealth does not keep costs low, the Plan could replace MetraHealth as the claims administrator. Further, plaintiff argues that MetraHealth's fee is based upon the achievement of performance goals which plaintiff

claims "may create a financial incentive for MetraHealth to deny Plaintiff's claim." (Pl.'s Mem. at 15).

However, a potential conflict of interest does not mean that the arbitrary and capricious standard cannot be applied. Instead, *Firestone* dictates that any potential conflict of interest is a factor to consider when deciding whether the decision to deny benefits was arbitrary and capricious. *See Firestone*, 489 U.S. at 115, 109 S.Ct. at 957; *Abnathya v. Hoffmann–LaRoche, Inc.*, 2 F.3d 40, 45 n. 5 (3d Cir.1993)(finding conflict of interest is a factor to consider and does not heighten standard); *see also Donato v. Metropolitan Life Ins. Co.*, 19 F.3d 375, 379 (7th Cir.1994).

We find that the Plan language evidences a grant of discretion in the Plan administrator to determine what services will be covered under the Plan and that plaintiff's objections to the application of the arbitrary and capricious standard are not persuasive, especially in light of the course of dealing among the parties. Therefore, we will apply the arbitrary and capricious standard of review.

## III. *Discussion*

■ In applying the arbitrary and capricious standard to review an employer's denial of benefits, "the district court may overturn a decision of the Plan Administrator only if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Abnathya*, 2 F.3d 40, 45 (3d Cir.1993)(internal citations omitted). "This scope of review is narrow, and 'the court is not free to substitute its own judgment for that of the [plan administrator] in determining'" *Id.* (internal citations omitted). Further, the court "must defer to the administrator unless it is clear that the decision is not supported by the evidence in the record or that the administrator has failed to comply with the procedures required by the Plan." *Id.* at 48.

Defendants argue that because Seffren's medical file was reviewed by an independent, board certified psychiatrist in accordance with the Plan language, the Court cannot find that the decision was unreasonable and "must uphold the denial of benefits." (Def.'s

Mem. at 20). *But cf. Nunez v. Louisiana Benefit Committee,* 757 F.Supp. 726, 731–32 (E.D.La.1991)(rejecting notion that court must affirm as long as there is "some evidence" to support opinion of claims administrator).

Plaintiff argues that there is sufficient record evidence to create a genuine issue of material fact regarding whether the procedure used by MetraHealth to review and deny these benefits was arbitrary and capricious and whether the denial of benefits was arbitrary and capricious based on the evidence that was before the Plan administrator.

Plaintiff argues that the procedure used by defendants to deny the claim was arbitrary and capricious as the evidence demonstrates that the claims file concerning Seffren was never reviewed in its entirety either by MetraHealth or the psychiatric consultant, Dr. Mazor. Both the language of the Plan and the letters from the Plan denying benefits state that the claims file will be or was reviewed in making the determination of medical necessity. Moreover, the Plan language states that the RCA Plan for Health, in addition to competent medical professionals, will review the claim. *See* (RCA Plan at 68). Further, the letter denying benefits from Dr. Kenneth Robbins ("Robbins"), who was invested with the discretion and authority to make final determinations respecting the claims, states that "the medical staff **and** an outside, independent, board certified psychiatric consultant have reviewed your final appeal, including all supporting documentation submitted to date." (July 18, 1996 Letter from Robbins affirming denial of benefits)(emphasis added).[3]

However, Dr. Mazor states that she only reviewed the "excerpts" from the file that were sent to her by Core and that she is not certain she reviewed the whole file. (Mazor Dep. at 29). In fact, Dr. Mazor admits that she did not review any information concerning the medical necessity of the x-rays taken, the medication that was given, or any other services, except room and board, even though the bill from Friends Hospital included charges for these services and even though MetraHealth denied benefits for these charges. (Mazor Dep. at 30–31).

Further, Debbie Fields, R.N. ("Fields"), a MetraHealth nurse who drafted the denial of benefits letter which was ultimately signed by Robbins and sent to plaintiff, testified that no one at MetraHealth ever reviewed any of the file at all, but instead only relied upon the report prepared by Dr. Mazor. (Fields Dep. at 51–55 and 57–59). Furthermore, Robbins testified that he did not review any of the file or even the report prepared by Dr. Mazor, rather he only reviewed and edited the letter denying benefits that was prepared by Fields. (Robbins Aff. at ¶ 3).

This evidence presents a genuine issue of material fact as to whether the denial of benefits was arbitrary and capricious. The express language of the Plan and the denial of benefits letters imply that the entire file should have been reviewed and expressly state that someone at the Plan, *in addition to* outside medical personnel, should have reviewed the file. However, there is record evidence to question whether the entire file was ever reviewed by anyone and as to whether anyone at the RCA Plan for Health ever reviewed any of the file at all. If the Plan's procedures were not followed, the denial of benefits could be arbitrary and capricious. *See Abnathya,* 2 F.3d at 48 (court should defer to administrator unless administrator failed to comply with plan procedure). Thus, summary judgment will be denied. *See* Fed.R.Civ.P. 56.

There is also a genuine issue of material fact regarding whether the denial was arbitrary and capricious in light of the evidence presented to the Plan. Dr. Mazor stated that Seffren could have been treated at a lesser level of care. (Mazor's Peer Review Analysis 4/16/96). However, there is record evidence to suggest that this lesser level of care was not available to Seffren. *See Nunez,* 757 F.Supp. at 735 (finding decision arbitrary and capricious where committee "accepted the opinion of its company consultant that

---

3. The April 25, 1996 letter from Robbins similarly indicates that MetraHealth "reviewed your claim and supporting documentation of reimbursement." (April 25, 1996 Letter from Robbins).

[plaintiff] could return to work with significant physical restrictions which were completely incompatible with the physical demands of her job"). Dr. Mazor hypothesized, approximately four years after Seffren was released, that Seffren could have been treated with either "outpatient therapy in conjunction with in-home services, or at an assisted living facility." (Mazor's Peer Review Analysis 4/16/96). However, as Dr. Mazor's own opinion recognizes, the record from Friends Hospital shows that many attempts were made to arrange Seffren's release to both of the outpatient treatments suggested by Dr. Mazor and that all attempts were unsuccessful.

The record indicates that initially Friends Hospital attempted to release Seffren to her home with the help of home health services. However, during Seffren's hospitalization, Seffren's husband, who would have provided the home care for Seffren as he had in the past, became ill with lung cancer which was "untreatable and probably terminal." (Mazor's Peer Review Analysis). Thus, there was no one at home who could care for Seffren. *See* (Dr. Ravetz' Letter dated January 18, 1993 and Dr. Kehr's Letter dated June 4, 1996). Friends Hospital attempted to have Seffren's daughter provide the care needed, but the daughter was not able to provide the support services to keep Seffren at home with home health care. *Id.* Finally, Friends Hospital and Seffren's family members decided that a nursing home was the best option. After this decision was made, the record reflects the efforts on the part of Friends Hospital to get the necessary physical exams completed and to find an appropriate facility that would take Seffren. *Id.* During this process, at least one nursing home denied acceptance of Seffren. Finally, Seffren was placed on a waiting list and ultimately placed at a nursing home facility.

The Plan's language states that a hospital stay is unnecessary if the beneficiary could have been treated at a lesser level of care "without reduction in the quality of care provided and without harm to the patient." (RCA Plan at 68). Here, because there is record evidence that suggests that there was no lesser level of care available, there is a genuine issue of material fact as to whether the denial of benefits was arbitrary and capricious in light of the Plan's provisions. *See Abnathya*, 2 F.3d at 48 (court defers to administrator unless it is clear that decision not supported by evidence). Therefore, summary judgment will be denied.

*IV. Conclusion*

An appropriate Order follows.

### ORDER

AND NOW, this 12th day of June, 1998, upon consideration of Defendants' Motion for Summary Judgment, Plaintiff's response thereto, and the Parties' supplemental responses, it is hereby ORDERED that, in accordance with foregoing Memorandum, the Motion is DENIED.