United States Court of Appeals,

Fifth Circuit.

No. 95-50794

Summary Calendar.

GIRLING HEALTH CARE, INC., Plaintiff-Appellant,

v.

Donna E. SHALALA, Secretary, Department of Health and Human Services, in her Representative Capacity;  United States Department of Health and Human Services, Defendants-Appellees.

June 13, 1996.

Appeal from the United States District Court for the Western District of Texas.

Before GARWOOD, WIENER and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:

In this appeal from the district court's affirmance of the denial by Defendant-Appellee Donna E. Shalala, Secretary, Department of Health and Human Services (hereafter, Secretary), of reimbursement of Medicare costs claimed by Plaintiff-Appellant Girling Health Care, Inc., Girling challenges the propriety of the district court's use of the summary judgment mechanism when reviewing a decision of an administrative agency.  Girling also asserts the absence of substantial evidence to support the Secretary's decision.  As this appeal involves a "complex and highly technical regulatory program,"[1] we write somewhat more extensively here than we might otherwise have when affirming a district court's summary judgment disposition of such an agency

---

[1]*See Thomas Jefferson University v. Shalala,* --- U.S. ----, ----, 114 S.Ct. 2381, 2387, 129 L.Ed.2d 405 (1994).

case. For the reasons hereinafter set forth, we affirm the district court's summary judgment affirming the Secretary's decision and dismissing Girling's action.

I

FACTS AND PROCEEDINGS

A. *Background*

This case arises under the Medicare Act.[2] Medicare home health care agencies,[3] such as Girling, are reimbursed by the Medicare program through private organizations acting as "fiscal intermediaries"[4] under contract with the Secretary. Under the Medicare Act, the Secretary prescribes methods for determining a provider's "reasonable cost" of providing services to Medicare beneficiaries.[5]

The fiscal intermediary determines the provider's reasonable cost based on an annual cost report submitted by the provider.[6] The provider is notified of the intermediary's determination in a written notice known as a "notice of program reimbursement"

---

[2] 42 U.S.C. § 1395 *et seq.* *See Sta-Home Health Agency, Inc. v. Shalala,* 34 F.3d 305, 307 & nn. 1-2 (5th Cir.1994) (additional background on the Medicare review process concerning a home health agency).

[3] 42 U.S.C. § 1395x(*o* )(1) (West 1992).

[4] In this case, the intermediaries are Blue Cross of Iowa and Prudential; Blue Cross succeeded Prudential on December 31, 1988.

[5] *See* 42 U.S.C. § 1395x(v)(1)(A) (West 1992).

[6] In this case, Prudential used a Provider Statistical and Reimbursement report ("PS & R") to adjust Girling's reimbursement amount. The parties concede that this PS & R is not in the record or otherwise available.

2

("NPR").

A provider that is dissatisfied with an intermediary's determination is entitled to a hearing before the Provider Reimbursement Review Board ("PRRB") if (1) the amount in controversy is $10,000 or more, and (2) the provider makes a request within 180 days following the date on which the NPR was mailed to the provider.[7] The PRRB's decision may be reversed, affirmed, or modified by the Secretary.[8] The district court has jurisdiction to review a final reimbursement decision by the PRRB or the Secretary under the Administrative Procedure Act.[9] The Administrator's reversal of the PRRB's decision in this case constitutes the final decision of the Secretary.[10]

B. *Operable Facts*

Girling's Memphis, Tennessee, sub-unit submitted its cost report for the 1986 fiscal year to Prudential, its fiscal intermediary, on November 6, 1986. On November 5, 1987, Prudential issued its NPR finding that Girling owed the Medicare program $31,591. Girling appealed the decision to the PRRB, contesting Prudential's failure to include a number of reimbursable costs and charges.

---

[7] 42 U.S.C. § 1395*oo*(a); 42 C.F.R. §§ 405.1835(a); 405.1841(a) (1995).

[8] 42 U.S.C. § 1395*oo*(f). This review is performed by the Administrator of the Health Care Financing Administration ("HCFA").

[9] 5 U.S.C. § 701 *et seq.*

[10] 42 C.F.R. § 405.1875.

3

On April 11, 1988, Prudential informed Girling that it had "ordered" a detailed listing of paid claims (a PS & R[11]), which would be forwarded to Girling so that it could identify any discrepancies. On July 11, 1988, Prudential wrote to Girling and explained that on April 29, 1988, Prudential had sent the PS & R of paid claims for fiscal years 1986 and 1987 to Girling but that Prudential had never received Girling's analysis of that report. Prudential requested that Girling submit its reconciliation by July 29, 1988, so that Prudential could analyze the disputed claims prior to terminating its role as intermediary on January 1, 1989.

The record contains a letter dated July 28, 1988, indicating Girling's intent to forward its reconciliation to Prudential; however, the address on the forwarding letter does not include a city or state. Nothing in the record indicates that Girling's reconciliation was ever received by Prudential. On August 9, 1988, Prudential again wrote to Girling and referred to Girling's being "in the process of identifying the discrepancies in your records and ours." Prudential never issued a report concerning Girling's reconciliation; neither did Prudential furnish its successor, Blue Cross of Iowa, a copy of the PS & R or other supporting information concerning the reimbursement dispute with Girling.

The PRRB held a hearing on November 30, 1993. On May 24, 1994, the PRRB issued a decision reversing Prudential's

---

[11]A report containing all Medicare charges reported by the Provider that is compiled quarterly and produced by the Intermediary as part of the reimbursement process. *See Medical Rehabilitation Services, P.C. v. Shalala,* 17 F.3d 828, 835 (6th Cir.1994).

disallowance of the reimbursement costs. The PRRB found that Girling had submitted "sufficient evidence" to show that the PS & R was flawed and that Girling should not be prejudiced by Prudential's failure to transfer the documentation to Blue Cross of Iowa. The PRRB also determined that Girling had timely submitted reconciliation data to Prudential.

The Administrator of the HCFA reviewed and reversed the decision of the PRRB, finding that Girling had not presented sufficient evidence to show that the cost amounts from the PS & R used by Prudential were inaccurate. The Administrator held that Girling's "reconstructed" data, which was retrieved with only limited success from Girling's archived computer billing records, failed to meet the requirements of 42 C.F.R. § 413.20. The Administrator's decision was the final decision of the Secretary.[12]

Girling filed the instant suit in the district court, seeking reversal of the Secretary's decision. Girling contends that it had submitted adequate data for reimbursement, but that the Secretary had "ignored evidence before the PRRB." The Secretary and Girling each moved for summary judgment. In its motion, Girling contended that the Secretary had made an arbitrary decision to deny reimbursement, which decision was not supported by substantial evidence, and that the Secretary had conducted an overly broad review of the PRRB's decision. Concluding that the Secretary's review of the PRRB's decision was not limited and that the Secretary's decision was supported by substantial evidence, the

---

[12]*See* 42 C.F.R. § 405.1875.

district court granted the Secretary's motion for summary judgment, and Girling timely appealed.

## II

## ANALYSIS

A. *Summary Judgment Standard*

Despite having filed its own motion for summary judgment, Girling argues to us that the summary judgment mechanism used by the district court is inconsistent with the standards for judicial review under the Administrative Procedure Act. Citing *Olenhouse v. Commodity Credit Corp.,*[13] Girling argues—for the first time on appeal[14]—that the district court should have reviewed Girling's summary judgment motion under the Federal Rules of Appellate Procedure and that such review would have required the district court to "examine[ ] the entire administrative record." Girling insists that the district court's failure to examine the entire record is the "only logical conclusion" that can be distilled from the district court's grant of summary judgment in favor of the Secretary.

This argument is frivolous. As more fully explained below, the district court properly focused on whether the Secretary's decision is supported by substantial evidence in the administrative record. In addition, *Olenhouse* is factually distinguishable and logically inapplicable. In *Olenhouse,* the Tenth Circuit addressed

[13]42 F.3d 1560, 1579 (10th Cir.1994).

[14]A determination whether the plain-error standard applies is unnecessary, as the argument advanced is not supported by the cited case law and is otherwise frivolous.

an instance in which the district court went beyond the administrative record to decide the administrative case before it, leading the appeals court to hold that summary judgment was an inappropriate mechanism for deciding administrative cases.[15] Here, the district court did not go beyond the administrative record; neither is that the basis for Girling's contention that the summary judgment standard is inappropriate. On the contrary, Girling contends that the district court did not delve deeply enough into the administrative record, not that the district court reviewed matters not considered by the Secretary which were outside of the record.

We have consistently upheld, without comment, the use of summary judgment as a mechanism for review of agency decisions.[16] Our practice is supported by the commentators.

> The summary judgment procedure is particularly appropriate in cases in which the court is asked to review or enforce a decision of a federal administrative agency. The explanation for this lies in the relationship between the summary judgment standard of *no genuine issue as to any material fact* and the nature of judicial review of administrative decisions.... [T]he administrative agency is the fact finder. Judicial review has the function of determining whether the administrative action is consistent with the law—that and no more.[17]

As Girling presents no compelling argument for changing this

---

[15]*See Olenhouse,* 42 F.3d at 1579-80.

[16]*See Sun Towers, Inc. v. Heckler,* 725 F.2d 315, 317, 325-26 (5th Cir.1984); *Baker v. Bell,* 630 F.2d 1046, 1054 (5th Cir.1980).

[17]10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 2733 (1983) (internal quotations and footnotes omitted; emphasis added).

practice, we decline the invitation to do so.

B. *The Secretary's Decision*

We will not reverse the Secretary's decision unless it is arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence on the record taken as a whole.[18]  Substantial evidence is " "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "[19]

Girling argues that the district court's decision was not based on a "thorough" discussion of the decision by the PRRB and the subsequent reversal of that decision by the Secretary.  The expertise of the PRRB and the HCFA Administrator are deemed equivalent, even when the latter reverses the former.[20]

Girling contends that the district court erred by not reviewing the PRRB's decision that Girling had provided adequate records.  Although deemed equal in expertise with the PRRB, the Secretary nevertheless has the option of making the final decision, and hers is the only one that is subject to judicial review.[21]

---

[18]5 U.S.C. § 706;  *See Sierra Medical Center v. Sullivan,* 902 F.2d 388, 390-91 (5th Cir.1990);  *Sun Towers,* 725 F.2d at 325-26.

[19]*Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citation omitted).

[20]*Sun Towers,* 725 F.2d at 326;  *Homan & Crimen, Inc. v. Harris,* 626 F.2d 1201, 1205 (5th Cir.1980), cert. denied, 450 U.S. 975, 101 S.Ct. 1506, 67 L.Ed.2d 809 (1981).

[21]*See Homan,* 626 F.2d at 1205 ("the ultimate decision of the agency is controlling.");  42 U.S.C. § 1395*oo*(f)(1) (West 1992) ("A decision of the Board shall be final unless the Secretary ... reverses, affirms, or modifies the Board's decision.").

Congress charged the Secretary with the primary responsibility for interpreting the cost reimbursement provisions of the Medicare Act, so courts accord particular deference to her interpretation of Medicare legislation.[22] Courts are required to "give substantial deference to an agency's interpretation of its own regulations."[23] Therefore, "unless an "alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation,' " we must defer to the Secretary's interpretation.[24]

The provider bears the burden of maintaining financial records and statistical data sufficient for proper determination of costs payable under the program.[25] The Secretary found that, under the applicable regulations, Girling bore the burden of verifying the data used in computing allowable costs, and that Girling had failed to carry that burden. The Secretary is not permitted to issue payments to a provider unless the provider "has furnished such information as the Secretary may request in order to determine the amounts due...."[26] "The principles of cost reimbursement

---

[22]*Batterton v. Francis,* 432 U.S. 416, 425, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448 (1977); *Sun Towers,* 725 F.2d at 325-26.

[23]*Thomas Jefferson,* --- U.S. at ----, 114 S.Ct. at 2386 (citations omitted).

[24]*Thomas Jefferson,* --- U.S. at ----, 114 S.Ct. at 2386 (citations omitted).

[25]42 C.F.R. § 413.20(a).

[26]42 U.S.C. § 1395g(a) (West 1992).

require that providers maintain sufficient financial records and statistical data for proper determination of costs payable under the program."[27] These financial records must be "capable of verification by qualified auditors" and "in sufficient detail to accomplish the purposes for which it is intended."[28] A provider's own cost accounting system is "only the first step in the ultimate determination of reimbursable costs."[29] Another step in the ultimate determination of reimbursable costs involves the intermediary's PS & R.

> As part of the reimbursement process, intermediaries are required to report all Medicare charges submitted by a provider along with any reimbursement for those charges in Provider Statistical and Reimbursement Reports ("PS & R reports"), compiled quarterly. Intermediaries must use these reports to check amounts on a provider's annual cost report. Intermediaries must also send the provider a Provider Summary Report for the PS & R reports used by the intermediary. The provider is then afforded the opportunity to furnish proof that the summary is inaccurate. If the provider fails to show any inaccuracies, the intermediary will then rely on the PS & R report to adjust the charges reported in the provider's cost report.[30]

Intermediaries, such as Prudential and Blue Cross of Iowa, have been directed by the Secretary to use the information in the PS & R "unless the provider furnishes proof that inaccuracies exist."[31]

In an attempt to prove the PS & R information inaccurate,

---

[27]42 C.F.R. § 413.20(a).

[28]42 C.F.R. § 413.24(a), (c).

[29]*Shalala v. Guernsey Memorial Hosp.,* --- U.S. ----, ----, 115 S.Ct. 1232, 1236, 131 L.Ed.2d 106 (1995).

[30]*Medical Rehabilitation Services,* 17 F.3d at 835.

[31]MEDICARE INTERMEDIARY MANUAL ("MIM") § 2242.

10

Girling proffered a billing transmittal log that could not be reconciled because the period for reprocessing had expired. Girling also provided claims information that it had reconstructed from a computer billing log. Girling did not contest that the period for reprocessing had expired; rather it explained that it was unable to reconstruct all of the billing information for the pertinent period from the computer tapes. Regarding the accuracy of Girling's information, a controller for Girling stated that "[w]e were unable to locate a couple of periods during the year[.] [A]s well, some of the data on the tapes was damaged and therefore unretrievable." As noted by the district court, the sum of the evidence provided to Prudential by Girling in an effort to rebut the PS & R consisted of four pages titled "FY 1986 Reconciliations."

Moreover, an audit coordinator for Blue Cross of Iowa testified before the PRRB that the information provided by Girling was insufficient to enable an intermediary to determine the number of allowable home visits, and that there was no way to reconcile the claims. Failure to provide records susceptible of being audited allows the Secretary to deny reimbursement. Thus Girling's failure to submit documentation to enable the intermediary to determine Medicare charges accurately is sufficient cause for reliance on the PS & R Reports. The Secretary's decision to rely on the PS & R Reports, rather than on Girling's recreated and admittedly incomplete data, is supported by substantial evidence. As the regulations and MIM § 2242 place the burden of maintaining

11

records on the provider, the Secretary's decision not to relieve Girling of the burden was neither arbitrary nor capricious.  For the foregoing reasons, the summary judgment of the district court is, in all respects,

AFFIRMED.