**GINGER MAE, INC.**

v.

**Henry CISNEROS, as Secretary, and the United States Department of Housing and Urban Development.**

Civil Action No. 95–678–A.

United States District Court, M.D. Louisiana.

Dec. 5, 1996.

---

Bob D. Tucker, Kantrow, Spaht, Weaver & Blitzer, Baton Rouge, LA, Mark Fox Evens, Reid & Priest, LLP, Washington, DC, for Plaintiff.

L.J. Hymel, United States Attorney, M.D.La., John J. Gaupp, Assistant United States Attorney, Baton Rouge, LA, Elizabeth A. Strange, United States Department of Justice, Civil Division, Federal Programs Branch, Washington, DC, for Defendants.

### RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

JOHN V. PARKER, Chief Judge.

This matter is before the court on a motion by defendants, Henry Cisneros, as Secretary,

and the United States Department of Housing and Urban Development for summary judgment. Pending also are motions by plaintiff, Ginger Mae, to supplement the administrative record and for summary judgment. All motions are opposed. Jurisdiction is based on 28 U.S.C. § 1331 and the Administrative Procedure Act (APA), 5 U.S.C. § 701 et seq.[1]

## Background

The following facts are undisputed. The Government National Mortgage Association, commonly known as GNMA or Ginnie Mae, is a corporation of the United States within the Department of Housing and Urban Development ("HUD"). Ginnie Mae administers a mortgage-backed securities program in which it authorizes certain qualifying private entities, typically mortgage companies and banks, to issue securities backed by pools of federally insured or guaranteed home mortgage loans. Ginnie Mae guarantees the timely payment of the "pass-through" principal and interest payments to the holders of these mortgage-backed securities.

Plaintiff, Ginger Mae, a subsidiary of United Companies Financial Corporation, also administers a mortgage-backed securities program. Ginger Mae purchases "B" and "C" home mortgage loans made to borrowers with troubled credit histories and pools these loans for sale on the securities market. Plaintiff calls this program the "Good Neighbor Reinvestment Mortgage Assistance Loan Program" or "Ginger Mae." Ginger Mae, through its affiliate United Companies Lending Corporation, obtained a federal registration for the service mark "GINGER MAE" for mortgage lending services on October 18, 1994.

On October 10, 1994, plaintiff submitted an application to HUD seeking approval to do business as a "HUD-FHA Investing Mortgagee." An investing mortgagee is generally defined as an organization that may purchase, hold or sell federally insured mortgages and has lawful authority to purchase federally insured mortgages in its own name. Defendants denied plaintiff's application for approval as an investing mortgagee.

On May 5, 1995, plaintiff exercised its right to a final review of the denial by appealing to the Deputy Assistant Secretary for Single Family Housing. HUD denied plaintiff's appeal on June 8, 1995. Pursuant to the Administrative Procedure Act (APA), plaintiff seeks from this court a declaratory judgment that HUD's denial of plaintiff's application was arbitrary, capricious, and in violation of law. Plaintiff also seeks an injunction requiring the defendants to approve plaintiff as an investing mortgagee.

## Arguments

Defendants argue that its disapproval of Ginger Mae as an investing mortgagee was rationally based upon its conclusion that "Ginger Mae" could be confused with "Ginnie Mae" and that the name suggests an association with the federal program that does not exist. Defendants also argue that the agency denied plaintiff's application because use of the name "Ginger Mae" by plaintiff violates 18 U.S.C. § 709.[2] Defendants contend there are no genuine issues of material fact because the documents contained in the administrative record speak for themselves and provide a factual basis for the court's review of this matter.

Plaintiff contends that defendants did not deny plaintiff's application on the basis that the name Ginger Mae is confusingly similar

1. The plaintiff states in its complaint that jurisdiction is also based on the Housing and Urban Development Act 42 U.S.C. 3532 et seq., the National Housing Act 12 U.S.C. 1701 et seq., and 28 U.S.C. 2201. Plaintiff has filed a petition for review with the United States Fifth Circuit believing it to be the appropriate forum to seek review of HUD's order. Plaintiff filed this action in the event the Fifth Circuit determines it has no jurisdiction over this matter.

Defendants note, however, that jurisdiction in this case is only proper under the APA because

only the APA waives the United States' sovereign immunity.

2. 18 U.S.C. § 709 makes it unlawful for anyone to use as a firm or business name the words "Government National Mortgage Association" ... or any combination or variation of those words. Plaintiff argues that the statutory language does not contain any prohibition against using an acronym that may be similar to the acronym "GNMA" or "Ginnie Mae." Because the matter is disposed of upon other grounds, the court does not reach that issue.

to Ginnie Mae or because the name suggests an association with the federal government, but only on the basis of its violation of 18 U.S.C. § 709. Plaintiff argues, therefore, the court must refrain from giving weight to these "post hoc" justifications that do not reflect the actual considerations deliberated upon by HUD when deciding to reject Ginger Mae's application. Additionally, plaintiff argues that the administrative record contains no facts to support defendants purported reasons for denying the application. Accordingly, the plaintiff argues that the defendants acted arbitrarily or capriciously in its denial of plaintiff's application.

## Law

■ Summary judgment is the proper mechanism for review of agency decisions. *Girling Health Care, Inc. v. Shalala*, 85 F.3d 211 (5th Cir.1996).

> The explanation for this lies in the relationship between the summary judgment standard of *no genuine issue as to any material fact* and the nature of judicial review of administrative decisions.... The administrative agency is the fact finder. Judicial review has the function of determining whether the administrative action is consistent with law—that and no more. *Id.* at 215.

Both sides agree that the proper scope of review is provided by Section 706(2) of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2). Under this section, a district court should not reverse the agency's decision unless it is arbitrary, capricious, an abuse of discretion or not in accordance with law.

■ The duty of a court reviewing agency action under the "arbitrary and capricious" standard is to ascertain whether the agency examined the relevant data and articulated a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." *Motor Vehicle Manufacturers Association of the United States, Inc. v. State Farm Mutual Automobile Insurance Company*, 463 U.S. 29, 42, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). The court may not substitute its judgment for that of the agency. *Id.*

■ Because the central focus of the arbitrary and capricious standard is on the rationality of the agency's decision making, rather than its actual decision, it is well-established that an agency's action must be upheld if at all, on the basis articulated by the agency itself. *United States v. Garner*, 767 F.2d 104, 116 (5th Cir.1985). Post hoc explanations are simply an inadequate basis for the exercise of substantive review of an administrative decision. *Id.* at 117.

## Discussion

■ As a preliminary matter, the court must rule on plaintiff's motion to supplement the administrative record. Plaintiff contends that defendants' position in a separate proceeding before the United States Patent and Trademark Office is "diametrically opposed" to the position taken in matters before this court. More specifically, plaintiff contends that in matters before this court, defendants assert that the administrative record contains sufficient facts to show confusion, but in matters before the Patent Office, defendants concede that the administrative record is not sufficient. Plaintiff offers a brief of defendants in that matter as evidence of an admission by defendants that the administrative record is not complete.

The motion is denied. Whether the mark "Ginger Mae" is properly registered is an issue unrelated to matters before this court concerning HUD's decision to deny Ginger Mae's application to become a HUD–FHA Investing Mortgagee.

## A. Post hoc Justifications

Next, we address plaintiff's argument regarding whether the defendants are providing the court with "post hoc" justifications for denying the plaintiff's application. Plaintiff first contends that the agency did not deny plaintiff's application on the basis that the name Ginger Mae is confusingly similar to Ginnie Mae, but only on the basis that such use violates 18 U.S.C. § 709.

We must determine, therefore, whether the administrative record provides the reasons for denial now argued by defendants.

The initial denial letter, Adm.Doc. No. 7, paragraph one, reads:

> Your application for approval as a HUD–FHA Investing Mortgagee has been reviewed. Although the application otherwise meets the Department's criteria for approval, we must deny approval based upon violation of Title 18 U.S.C. § 709.

This first paragraph in the denial letter, read alone, suggests that the denial of the application was based solely upon a violation of 18 U.S.C. § 709.

Although the court may not supply a reasoned basis for the agency's action which the agency itself has not given, the court finds that the administrative record establishes that the agency denied the application, not only on the alleged § 709 violation, but also on the basis that the name Ginger Mae is confusingly similar to Ginnie Mae. The denial letter includes additional language as follows:

> [c]learly the name Ginger Mae is quite similar to and likely to be confused with that of Ginnie Mae. To avoid misleading the public, Ginnie Mae prefers that the name 'Ginger Mae' not be used to represent any corporation, division or product in the mortgage banking industry.

Not only does the denial letter show that defendants denied the application in part on the basis that the name Ginger Mae is confusingly similar to Ginnie Mae, but plaintiff's own correspondence to HUD demonstrates that plaintiff understood this as a reason for denial. In response to the denial letter, plaintiff notified HUD of its appeal acknowledging that "[t]he sole basis for the denial was concern on the part of the Government National Mortgage Association that the name Ginger Mae is quite similar to and likely to be confused with that of Ginnie Mae." Adm. Doc. No. 6. Plaintiff's letter does not mention the alleged violation of § 709. The court finds that, upon the administrative record, the confusing similarity between plaintiff's name, Ginger Mae, and Ginnie Mae was a basis for defendants' denial of plaintiff's application.

**B. The Administrative Record**

Plaintiff contends that the administrative record fails to support any of HUD's reasons for denying plaintiff's application. First, plaintiff argues that the administrative record fails to contain any evidence that the name Ginger Mae is confusingly similar to the name Ginnie Mae. Plaintiff refers to the fact that Ginger Mae has coexisted with Ginnie Mae for nearly two years and that the administrative record fails to contain any evidence as to whether Ginger Mae's name caused actual confusion with Ginnie Mae during that time period. Defendants contend that the reasons for HUD's denial required no data or research, rather "it is an obvious, uncontestable fact" that the names Ginger Mae and Ginnie Mae are confusingly similar.

■ To determine whether the agency's choice was arbitrary and capricious, the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

■ Although the evidence in the administrative record is not extensive, it is sufficient for the agency to make a reasoned decision concerning the likelihood of confusion between the two parties. The administrative record fails to provide any evidence of actual confusion; such a finding, however, is not determinative.

The administrative record establishes that both parties administer mortgage backed securities programs. Unlike the past two years in which Ginger Mae and Ginnie Mae coexisted, if Ginger Mae is approved as an investing mortgagee it would then have the potential to purchase, hold or sell federally insured mortgages, a privilege which it does not now enjoy. The possibility of confusion is logically heightened because plaintiff would then be able to deal with FHA mortgages. HUD's objective was to prevent the occurrence of actual confusion in the mortgage industry before it occurred.

Plaintiff argues, however, that it is unlikely that any potential investor would confuse the distinct entities because plaintiff does not

intend to purchase or hold FHA-insured loans; rather, it only sought approval in order to meet certain requirements under the Secondary Mortgage Enhancement Act ("SMEA").[3] The court finds that Ginger Mae's motives for applying to become a HUD–FHA investing mortgagee are matters which HUD could properly ignore without being arbitrary and capricious. The fact is that once approved as a HUD–FHA investing mortgagee, Ginger Mae has the ability to be associated with FHA insured loans, whether it elects to do so or not. This fact is properly within the concern of HUD.[4]

In addition, there is no relevant data which the agency ignores. Plaintiff argues that because the name Ginger Mae is a registered trademark with the United States Patent Office, the Ginger Mae mark is not deceptive. The court agrees with defendants that this fact is not relevant for the reasons stated supra.

Whether there was a "rational connection between the facts found and the choice made" is the next inquiry. Defendants argue that the substantial risk which they were avoiding by denying plaintiff's application was the risk that the Ginger Mae MBS program could be mistaken for the federally guaranteed Ginnie Mae MBS program. Because the denial of plaintiff's application will not prevent it from continuing to have a MBS program similar to defendants, we appreciate the defendants' argument to be that if Ginger Mae is allowed to purchase, hold or sell federally insured mortgages there may be a higher likelihood of confusion because Ginger Mae could then be associated with federally insured mortgages.[5]

The court finds that HUD considered the relevant factors and that the record provides a rational relationship between those factors and the choice made; thus, its decision is not arbitrary and capricious on this basis. Because the court finds that HUD was not arbitrary and capricious in denying plaintiff's application on the basis that the name "Ginger Mae" is confusingly similar to "Ginnie Mae," the court expresses no opinion concerning the alleged 18 U.S.C. § 709 violation.

Accordingly, the motion by plaintiff to supplement the record is hereby DENIED. Summary judgment is hereby GRANTED in favor of defendants, Henry Cisneros, as Secretary, and the United States Department of Housing and Urban Development and this action will be dismissed.

---

3. Under SMEA, "mortgage related securities" generally are exempted from state securities laws.

4. Ginger Mae also argues that HUD arbitrarily and capriciously denied its application because the administrative record demonstrates that Ginger Mae deals only with sophisticated financial institutions that know Ginger Mae is a private company. Admin.Rec. No. 5 and 10. The court finds this argument lacks merit. The fact that plaintiff deals only with sophisticated financial institutions does not remove the possibility of confusion, though it arguably lessens it. Additionally, though plaintiff *currently* may be dealing only with sophisticated financial institutions, nothing prohibits plaintiff from expanding its market.

5. Defendants explain their concerns if the application was approved as follows: "It is because the Ginger Mae MBS program, which is not dealing in FHA insured mortgages, could be mistaken for the federally guaranteed Ginnie Mae MBS program that HUD denied approval. The significant difference between the two programs is that the Ginger Mae MBS program is backed by non-conforming "B" and "C" home mortgage loans made to borrowers who cannot meet the standards for conforming loans—whereas the Ginnie Mae MBS program is backed by federally insured loans, with payment to the investors guaranteed by the full faith and credit of the United States. HUD denied Ginger Mae approval to protect against the possibility that members of the public would think they are dealing with the federally guaranteed MBS program when they were not." Def. Reply brief p. 20.