Greg **SHELTON**

v.

**BENEFIT PLAN OF EXXON CORPORATION, et al.**

**No. CIV. A. G–97–529.**

United States District Court,
S.D. Texas,
Galveston Division.

May 27, 1998.

Alton C. Todd, Alvin, TX, for plaintiff.

David M. Rivet, Exxon Company USA, William Scott Helfand, Magenheim Bateman Robinson Wrotenbery and Helfand, Houston, TX, for defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff brings this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461, challenging his denial of benefits. Now before the Court is Defendants' Motion for Summary Judgment. For the reasons that follow, that Motion is **GRANTED.** Consequently, Plaintiff's claims are **DISMISSED WITH PREJUDICE** in their entirety.

### I. FACTUAL SUMMARY

Plaintiff was employed by Exxon Corporation for fifteen years in various managerial positions. In February 1995, Exxon demoted Plaintiff to "Senior Staff Analyst" and transferred him to Exxon's Baytown Chemical Plant. In April 1995, after asking to be allowed to miss a safety meeting because Plaintiff wanted to avoid the embarrassment of seeing former subordinates and supervisors at the meeting, Plaintiff was forced to attend. Thereafter, due to his alleged humiliation, Plaintiff left work and contends he was unable to attend the next day. Plaintiff was placed on disability leave on April 21, 1995.

Exxon policy prohibits personal use of Exxon computers. In August of 1995, while Plaintiff remained on disability leave, Exxon reassigned his computer to another employee. It was then discovered that on the harddrive of Plaintiff's former computer was a 360 page novel, written by Plaintiff. Also discovered were various letters written to literary agents, which asked for help in seeking a publisher and possible movie deals for the book. Upon further investigation, which Exxon called an "audit," numerous unauthorized software applications also installed on Plaintiff's computer harddrive were also discovered. Exxon also claimed to have found

expense account irregularities, and falsification of Plaintiff's time sheet, wherein Plaintiff claimed to have been working but was actually attending a tryout for the television program *Wheel of Fortune* television program. Plaintiff admits, at least partly, to using the computer during the work day for his personal use.

During the investigation, Exxon claims to have contacted Plaintiff several times, asking him to meet with the Exxon investigators. Apparently by that time, Plaintiff had retained counsel and refused to participate in the investigation, other than through his attorney. Plaintiff was terminated in February 1996. Prior to the instant litigation, Plaintiff appeared before this Court in *W. Greg Shelton v. Exxon Corp. et al.*, No. G–96–307. In that case, Plaintiff sued Exxon alleging wrongful termination in violation of federal law; specifically, Plaintiff claimed in that case that Exxon fired him due to his disability, while Exxon contended that Plaintiff's disability had nothing to do with his termination. After this Court denied Exxon's Motion for Summary Judgment, the case settled for an undisclosed amount on the eve of trial.

Almost a month before his termination, Plaintiff applied for disability retirement and annuitant status with Asif Beg, Administrator of Exxon's Benefit Plan ("Plan"). In addition to serving as Administrator of the Plan, Beg also served as Human Resources Manager for another division of Exxon Corporation. According to the Plan, the Administrator has full and final discretionary authority to determine eligibility for Plan benefits, to construe the terms of the Plan, and to decide appeals by participants or beneficiaries. As part of his investigation, Beg contacted the manager of Plaintiff's department who told him the results of Exxon's audit. Thereafter, during his investigation, Beg was also informed of Plaintiff's February termination.

After completing his investigation regarding Plaintiff's eligibility for benefits, Beg advised Plaintiff of his ineligibility for annuitant status because he was not age 55 and because he had been discharged for reasons

unrelated to his disability. In accord with the Plan, however, Plaintiff continues to receive benefits equal to half-pay. Plaintiff's Consolidated Omnibus Budget Reconciliation Act ("COBRA") benefits, which end by operation of law eighteen months after an employee's termination or separation, ended on August 31, 1997, despite Plaintiff's efforts to continue them.

## II. STANDARD OF REVIEW

■ Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When ruling on a motion for summary judgment, the evidence is viewed through "the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Generally, "a denial of benefits challenged under [ERISA[1]] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary *discretionary authority to determine eligibility* for benefits or to *construe the terms of the plan.*" *Firestone & Tire Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989)(emphasis added). If discretion is given in the Plan to either determine eligibility or construe its terms, the standard of review is the more lenient "abuse of discretion." *See id.*

Defendants correctly argue in this case that the abuse-of-discretion standard applies because the Plan expressly grants discretionary authority to the administrator.[2]

1. ERISA was enacted "to promote the interests of employees and their beneficiaries in employee benefit plans," *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983), and "to protect contractually defined benefits," *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 148, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985). *See generally* 29 U.S.C. § 1001 (setting forth congressional findings and declarations of policy regarding ERISA). The parties agree that the Plan at issue is an employee welfare benefit plan covered by ERISA. ERISA § 1132(a)(1)(B) provides that "[a] civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the

## III. WHAT EVIDENCE CAN THE COURT CONSIDER?

■ Although the parties do not discuss the issue, the general rule is that the decision of whether an abuse of discretion has occurred is based upon information known to the administrator at the time he made the decision. *See Salley v. E.I. DuPont de Nemours & Co.,* 966 F.2d 1011, 1015 (5th Cir. 1992). However, there is a distinction between that evidence considered when reviewing a factual determination and that evidence considered when determining whether the administrator abused his discretion in denying benefits.

"[W]e now make manifest that a district court is not confined to the administrative record in determining whether, under our analytical framework, a plan administrator abused his discretion in making a benefit determination. This is not to say that a litigant dissatisfied with an administrator's benefit determination is free to disregard the evidence before the administrator and relitigate in court the historical facts surrounding a claim. We have long held that in conducting review under an abuse of discretion standard, a district court should evaluate the administrator's fact findings regarding the eligibility of a claimant based on the evidence before the administrator, assuming that both parties were given an opportunity to present facts to the administrator. Yet, in these and other opinions, we have also explained how other evidence, not dealing with the historical facts underlying the benefit determination, and therefore usually not in the adminis-

terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *See* 29 U.S.C. § 1132(a)(1)(B).

2. The Court is cognizant of the Fifth Circuit's reluctance to supplant the judgment of plan administrators; however, this Court notes that the use of deferential review when a plan confers discretion on the administrator, *and* when the administrator makes factual determinations, operates adversely to "afford less protection to employees and their beneficiaries than they enjoyed before ERISA was enacted." *Bruch,* 489 U.S. at 115, 109 S.Ct. at 956.

trative record, was relevant under our abuse of discretion analysis."

*Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 639 (5th Cir.1992).

 Plaintiff argues that the Administrator, who also was employed by a separate division of Plaintiff's employer, had a conflict of interest which caused him to deny Plaintiff's application for Plan benefits. Plaintiff further asserts that the Administrator abused his discretion by failing to conduct an independent investigation, and instead relied solely upon the representations and findings of Exxon management regarding the circumstances surrounding Plaintiff's termination. It is clear that Plaintiff's assertion before the Court is not simply "the administrator got it wrong." If such were Plaintiff's contention, then this Court would be bound solely by the administrative record. Instead, Plaintiff asserts that "the administrator got it wrong *because* his interests were in conflict and *because* he did not conduct an independent investigation." Thus, as this Court understands Fifth Circuit precedent, and in light of Plaintiff's allegations of Administrator misconduct, the Court is *not* bound by the administrative record in this case. *See Southern Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 102 (5th Cir.1993); *Mathis v. Connecticut General Life Ins. Co.*, 882 F.Supp. 92, 95 (N.D.Tex.1994).

### IV. ANALYSIS

 At the outset, the Court notes that even if it is found that a conflict of interest exists, such a finding does not change the standard of review. *See Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1014 (5th Cir.1992). However, any potential conflict of interest is considered when determining whether the Administrator abused his discretion. *See Haubold v. Intermedics, Inc.*, 11 F.3d 1333, 1337 (5th Cir.1994); *Lowry v. Bankers Life & Casualty Retirement Plan*, 871 F.2d 522, 525 (5th Cir.1989) (declaring that a "plan administrator's conflict of interest is certainly material to judicial review under our circuit's pre-*Bruch* arbitrary and capricious standard").

 Generally, application of the abuse-of-discretion standard is a two-step process. *See Wildbur*, 974 F.2d at 637. This process requires the Court to first determine the legally correct interpretation of the Plan and then examine whether the administrator applied the same. If the administrator failed to apply a legally correct interpretation of the Plan, the Court then determines whether the administrator's actions constituted an abuse of discretion. *See id.* When determining the legally correct interpretation of the Plan, the Court considers:

(1) whether the administrator has given the plan a uniform construction,

(2) whether the interpretation is consistent with a fair reading of the plan, and

(3) any unanticipated costs resulting from different interpretations of the plan.

*Id.* at 638 (citing *Jordan v. Cameron Iron Works*, 900 F.2d 53, 56 (5th Cir.1990)).

 If the administrator has applied a legally correct interpretation of the Plan, then no further inquiry is required. *See, e.g., Chevron Chemical Co.*, 47 F.3d at 146; *Haubold v. Intermedics, Inc.*, 11 F.3d 1333, 1341 (5th Cir.1994). However, if the Court finds the administrator's interpretation legally incorrect, it must then evaluate whether that interpretation constituted an abuse of discretion. In conducting this analysis, the Court considers:

(1) the internal consistency of the plan under the administrator's interpretation,

(2) any relevant regulations formulated by the appropriate administrative agencies, and

(3) the factual background of the determination and any inferences of lack of good faith.

*Wildbur*, 974 F.2d at 638 (citing *Batchelor v. Intn'l Brotherhood of Electrical Workers Local 861 Pension and Retirement Fund*, 877 F.2d 441, 445–48 (5th Cir.1989)). If a benefits denial is supported by substantial evidence and is not erroneous as a matter of law, it is not arbitrary or capricious, and therefore is not an abuse of discretion. *See Wildbur*, 974 F.2d at 637 n. 12.[3] Substantial

---

3. Apparently, the abuse-of-discretion standard is the equivalent of the arbitrary or capricious stan-

evidence is " ' "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ' " *Girling Health Care, Inc. v. Shalala,* 85 F.3d 211, 215 (5th Cir.1996) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citation omitted)).

Where, as here, the case does not turn on sophisticated Plan interpretation issues, the Court is not *required* to apply the two-step process of *Wildbur* described above. *See Duhon v. Texaco, Inc.,* 15 F.3d 1302, 1307 n. 3 (5th Cir.1994)("However, the reviewing court is not rigidly confined to this two-step analysis in every case."); *Rigby v. Bayer Corp.,* 933 F.Supp. 628, 631–32 (E.D.Tex.1996)(eschewing the two-step inquiry of *Wildbur* and asking simply whether the administrator abused its discretion). The issue in this case is not. whether Plaintiff is disabled. Moreover, in this case, the Court is not being called upon to determine the correct interpretation of the Plan. This case, instead, turns upon whether Plaintiff was terminated *due to his disability* or whether he was terminated for other reasons. Indeed, this is the very same issue which was before this Court in Plaintiff's previous case against his employer, Exxon. That case was settled before this issue was resolved. Contrary to Plaintiff's assertions, however, this Court need not actually determine whether Plaintiff was terminated due to his disability; instead, this Court need only determine whether the Administrator abused his discretion when *he* determined that Plaintiff was not terminated due to his disability. On this issue, the summary judgment evidence is clear.

■ After a careful review of the evidence, the Court concludes that Plaintiff has failed to demonstrate a genuine issue of material fact as to whether Defendant abused his discretion when he found Plaintiff ineligible to receive benefits. The clear terms of the Plan provide that an employee is not eligible for annuitant status unless he is ter-

minated for his incapacity. After conducting an investigation, the Administrator determined that Plaintiff was not terminated for his incapacity, but instead was terminated because of unauthorized use of his computer and irregularities in his time sheet and expense account. The Court understands that the Administrator was actually employed by Exxon in another division; however, this fact, in and of itself, is absolutely insufficient to raise a fact issue regarding whether the Administrator abused his discretion. Moreover, it is clear that the Administrator relied upon the information given to him by Exxon, his own staff, and Plaintiff himself when he made his determination. Under the circumstances, the Court finds, as a matter of law, that this is the kind of information that one would rely upon when acting reasonably. Furthermore, just because this Court may have conducted the investigation differently does not mean the Administrator abused his discretion. Simply put, although Plaintiff alleges a conflict of interest and an inadequate investigation, he offers insufficient evidence to support his contentions and avoid summary judgment. Indeed, to the contrary, the evidence overwhelmingly reveals that the Administrator acted properly and did not abuse his discretion. Thus, in light of the stringent legal standard that Plaintiff must overcome to overturn the Administrator's decision, Plaintiff's claims must fail here. *See Southern Farm,* 993 F.2d at 103–04 (holding that a plan administrator's denial of benefits based on the factual determination about a plan participant's cause of death was supported by autopsy report and three medical records, and therefore it was a reasonable decision); *Pierre,* 932 F.2d at 1563. (holding that a plan administrator's denial of benefits based on the factual determination that the plan participant's death was not "accidental" within the terms of the policy was not an abuse of discretion because the determination was supported by the police investigation, private investigation, and conversations

dard. *See Wildbur,* 974 F.2d at 635 n. 7 (noting no substantive difference between "abuse of discretion" and "arbitrary and capricious" standards); *Salley,* 966 F.2d at 1014 ("In applying

the abuse of discretion standard, we analyze whether the plan administrator acted arbitrarily or capriciously.").

with the deceased's wife).[4]

Because Plaintiff does not raise an issue of fact, Defendants' Motion for Summary Judgment must be **GRANTED**. Consequently, all of Plaintiffs' claims are hereby **DISMISSED WITH PREJUDICE**. The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**

### *FINAL JUDGMENT*

In accordance with the Court's Order Granting Summary Judgment issued on this day, all of Plaintiffs' claims are hereby **DISMISSED WITH PREJUDICE**. The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**THIS IS A FINAL JUDGMENT.**

---

4. The Court commends counsel for all parties for the excellent work in this case.