**Robert KOLODZAIKE, Plaintiff,**

v.

**OCCIDENTAL CHEM. CORP., Defendant.**

**No. CIV.A. G–99–432.**

United States District Court, S.D. Texas, Galveston Division.

March 27, 2000.

Ted C. Litton, Royston, Rayzor, Vickery and Williams, Houston, TX, for Ted C. Litton, mediators.

Gregg M. Rosenberg, Gregg M. Rosenberg & Associates, Houston, TX, for Robert Kolodzaike, plaintiffs.

Holly Harvel Williamson, Littler Mendelson, Houston, TX, for Occidental Chemical Corporation, defendants.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff brings this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461, challenging his denial of benefits. Now before the Court is Defendant's Motion for Summary Judgment. For the reasons that follow, that Motion is **GRANTED.** Consequently, Plaintiff's claims are **DISMISSED WITH PREJUDICE** in their entirety.

## I. FACTUAL SUMMARY

Plaintiff was employed by Occidental Chemical Corporation for twenty-seven years, serving in various positions at the company's chemical plant in Pasadena, Texas. On two separate occasions in 1996, Occidental stripped Plaintiff of his responsibilities as board operator due to performance issues, namely filling out crossword puzzles while on duty, failing to work cooperatively with co-workers, and taking unreasonably long lunch breaks. As a result, Occidental transferred Plaintiff to the Solution Prep Area. In Fall 1997, Plaintiff allegedly failed to add mix to a hopper, which caused the plant's reactors to shut down. A review of Plaintiff's work record in 1997 indicates that Plaintiff was responsible for fifteen minor work related accidents in the span of less than eight years. Consequently, in early 1998, Occidental placed Plaintiff on a formal performance improvement plan, in which Plaintiff agreed that his continued employment remained contingent upon not causing further injuries due to negligence and not creating productivity-related issues because of a lack of communication or poor teamwork skills. Shortly after entering into this agreement, Plaintiff over-filled a hopper with mixture causing Occidental's research and development team to devote the entire night handling the problem so as to avoid a shutdown of the plant's reactors. Plaintiff acknowledges that the incorrect mix was due to his failure to properly communicate with a co-worker regarding the mix concentration. Seventeen days later, Plaintiff overfilled another hopper, which ultimately forced Occidental to once again shut down the plant's reactor—this time for sixty-seven hours. Plaintiff admits this error resulted from his failure to read the log to his relief workers before be began to add mix into the hopper. Before too long Plaintiff committed yet another error, this time overfilling a tank and causing a minor spill in the plant.

Based on this laundry list of blunders, Occidental terminated Plaintiff's employment on March 5, 1998. Following his dismissal, Plaintiff applied for benefits under Occidental's Severance Pay Plan ("the Plan"). According to the Plan, the Administrator has full and final discretionary authority to determine eligibility for Plan benefits, to construe the terms of the Plan, and to decide appeals by participants or beneficiaries. After completing her investigation regarding Plaintiff's eligibility benefits, the Plan Administrator, Gwendolyn W. Gaither, advised Plaintiff of his ineligibility because he had been discharged for failure to adhere to performance standards.

Plaintiff contends, however, that the reasons articulated by Defendant for his dismissal and denial of severance benefits are without merit. Prior to his termination, Plaintiff applied for and received workers' compensation benefits due to injuries he allegedly sustained while working at the Occidental plant. Consequently, Plaintiff argues that the explanation surrounding his termination serve merely as a pretext for retaliation to his worker's compensation claim. Consequently, Plaintiff filed a lawsuit against Occidental alleging worker's compensation retaliation.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When ruling on a motion for summary judgment the evidence is viewed through "the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Generally, "a denial of benefits challenged under [ERISA][1] is to be

---

1. ERISA was enacted "to promote the interests of employees and their beneficiaries in employee benefit plans," *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983), and "to protect

reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary *discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989) (emphasis added). If discretion is given in the Plan either to determine eligibility or to construe its terms, the standard of review is the more lenient "abuse of discretion." *See id.* Defendant correctly argues in this case that the abuse-of-discretion standard applies because the Plan expressly grants discretionary authority to the Administrator.[2] The Court also notes that the decision of whether an abuse of discretion has occurred is based upon information known to the administrator at the time he made the decision. *See Salley v. E.I. DuPont de Nemours & Co.,* 966 F.2d 1011, 1015 (5th Cir.1992).

In evaluating Plaintiff's claims, the Court remains mindful of the Fifth Circuit's recent admonition that if a conflict arises on the part of the Plan administrator, deference to the discretionary standard should be adjusted depending upon the nature of the conflict. *See Vega v. National Life Ins. Servs., Inc.,* 188 F.3d 287, 295 (5th Cir.1999) (en banc). Under this approach, the "court always applies the abuse of discretion standard, but gives less deference to the administrator in proportion to the administrator's apparent conflict." *Id.* at 296. Thus, "[t]he greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be." *Id.* at 297. Because there is no allegation of a conflict of interest involving the Plan Administrator in this case, the Court need not apply the *Vega* sliding scale in deciding Plaintiff's claims.

## IV. ANALYSIS

Generally, application of the abuse-of-discretion standard is a two-step process. *See Wildbur,* 974 F.2d at 637. This procedure requires the Court first to determine the legally correct interpretation of the Plan and then to examine whether the administrator applied the same. If the administrator failed to apply a legally correct interpretation of the Plan, the Court then determines whether the administrator's actions constituted an abuse of discretion. *See id.* When determining the legally correct interpretation of the Plan, the Court considers:

(1) whether the administrator has given the plan a uniform construction,

(2) whether the interpretation is consistent with a fair reading of the plan, and

(3) any unanticipated costs resulting from different interpretations of the plan.

*Id.* at 638 (citing *Jordan v. Cameron Iron Works, Inc.,* 900 F.2d 53, 56 (5th Cir. 1990)).

If the administrator has applied a legally correct interpretation of the Plan, then no further inquiry is required. *See, e.g., Chevron Chemical Co.,* 47 F.3d at 146; *Haubold v. Intermedics, Inc.,* 11 F.3d 1333, 1341 (5th Cir.1994). However, if the Court finds the administrator's interpretation legally incorrect, it must then evaluate

contractually defined benefits," *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 148, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985). *See generally* 29 U.S.C. § 1001 (setting forth congressional findings and declarations of policy regarding ERISA). The parties agree that the Plan at issue is an employee welfare benefit plan covered by ERISA. ERISA § 1132(a)(1)(B) provides that "[a] civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the

terms of the plan." *See* 29 U.S.C. § 1132(a)(1)(B).

2. The Court is cognizant of the Fifth Circuit's reluctance to supplant the judgment of plan administrators; however, this Court notes that the use of deferential review when a plan confers discretion on the administrator, *and* when the administrator makes factual determinations, operates adversely to "afford less protection to employees and their beneficiaries than they enjoyed before ERISA was enacted." *Bruch,* 489 U.S. at 115, 109 S.Ct. at 956.

whether that interpretation constituted an abuse of discretion. In conducting this analysis, the Court considers:

(1) the internal consistency of the plan under the administrator's interpretation,

(2) any relevant regulations formulated by the appropriate administrative agencies, and

(3) the factual background of the determination and any inferences of lack of good faith.

*Wildbur*, 974 F.2d at 638 (citing *Batchelor v. International Brotherhood of Elec. Workers Local 861 Pension and Retirement Fund*, 877 F.2d 441, 445–48 (5th Cir.1989)). If a benefits denial is supported by substantial evidence and is not erroneous as a matter of law, it is not arbitrary nor capricious, and therefore is not an abuse of discretion. *See Wildbur*, 974 F.2d at 637 n. 12.[3] Substantial evidence is " ' "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ' " *Girling Health Care, Inc. v. Shalala*, 85 F.3d 211, 215 (5th Cir.1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citation omitted)).

When, as here, the case does not turn on sophisticated Plan interpretation issues, the Court is not required to apply the two-step process of *Wildbur* described above. *See Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1307 n. 3 (5th Cir.1994) ("However, the reviewing court is not rigidly confined to this two-step analysis in every case."); *Rigby v. Bayer Corp.*, 933 F.Supp. 628, 631–32 (E.D.Tex.1996) (eschewing the two-step inquiry of *Wildbur* and asking simply whether the Administrator abused its discretion). In this case, the Court is not being called upon to determine the correct interpretation of the Plan. This case, instead, turns upon whether Plaintiff was terminated *due to his failure to adhere to performance standards* or whether he was terminated for other reasons. Therefore, this Court need only determine whether the Administrator abused his discretion when *she* determined that Plaintiff was not terminated due a reason other than a failure to adhere to performance standards. On this issue, the Court finds the summary judgment evidence clearly supports the Plan Administrator's decision.

After a careful review of the evidence, the Court concludes that Plaintiff has failed to demonstrate a genuine issue of material fact as to whether the Plan Administrator abused her discretion when she found Plaintiff ineligible to receive benefits. The clear terms of the Plan provide that an employee is not eligible for severance benefits if he is terminated for failure to adhere to performance standards. *See Def.'s Mot. for Summ. J. Ex. A, Attach. 1 at 1*. After conducting an investigation, the Plan Administrator determined that Plaintiff was terminated because of numerous performance problems. It is clear that during her review, the Administrator relied upon the information given to her by Occidental. *See Gaither Decl.* ¶ 6–7 ("Even though [Plaintiff's counsel]'s letter alone made Mr. Kolodzaike ineligible for severance benefits under the Severance Pay Policy, I went ahead and made inquiries into the reasons Occidental Chemical Corporation terminated Mr. Kolodzaike's employment to see whether there was any basis for Mr. Kolodzaike's claim for severance benefits."); *id.* (noting that the Human Resources Manager for Manufacturing at the Pasadena plant "reported to me that Occidental Chemical Corporation terminated Mr. Kolodzaike's employment due to performance issues; that is, Mr. Kolodzaike failed to adhere to Occidental Chemical Corporation's performance standards in that he had made a series of mistakes that affected the Company's productivity"). Clearly, the Admin-

---

**3.** Apparently, the abuse-of-discretion standard is the equivalent of the arbitrary or capricious standard. *See Wildbur,* 974 F.2d at 635 n. 7 (noting no substantive difference between "abuse of discretion" and "arbitrary and ca-pricious" standards); *Salley,* 966 F.2d at 1014 ("In applying the abuse of discretion standard, we analyze whether the plan Administrator acted arbitrarily or capriciously.").

istrator reached a reasoned decision that was not based on unsupported suspicions.

In response, Plaintiff argues that the Administrator abused her discretion by failing to conduct a more thorough, independent investigation, and instead relied solely upon the representations and findings of Occidental's management regarding the circumstances surrounding Plaintiff's termination. The Court understands that the Administrator did not contact Plaintiff during the investigation; however this fact, in and of itself, is absolutely insufficient to raise a fact issue regarding whether the Administrator abused her discretion—particularly since Plaintiff fails to assert the existence of a conflict of interest on the part of the Plan Administrator. *Cf. Vega,* 188 F.3d at 299 (noting that a plan administrator is not obligated to reasonably investigate a claim).[4] Under the circumstances, the Court finds, as a matter of law, that the Administrator utilized the kind of information one would rely upon when acting reasonably.

Furthermore, just because this Court may have conducted the investigation differently, and in a more expeditious manner, does not mean the Administrator abused her discretion. *See Vega,* 188 F.3d at 297 (noting that the reviewing court "need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness—even if on the low end"); *Woolsey v. Marion Labs., Inc.,* 934 F.2d 1452, 1460 (10th Cir.1991) (observing that when reviewing under the arbitrary and capricious standard, "[t]he Administrator['s] decision need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within [her] knowledge to counter a claim that it was arbitrary or capricious"). Although Plaintiff alleges an inadequate investigation, he offers insufficient evidence to support his contentions and thereby avoid summary judgment. Indeed, to the contrary, the evidence overwhelmingly reveals that the Administrator acted properly and did not abuse her discretion.[5] Thus, in light of the stringent legal stan-

4. In fact, the record reveals that prior to the Plan Administrator's decision to deny Plaintiff severance benefits, Plaintiff's counsel contacted the Plan Administrator and supplied her with the finding made by the Texas Workforce Commission that Plaintiff was "discharged for his inability to perform his assigned work to the employer's satisfaction." *Def.'s Mot. for Summ. J. Ex. A. Attach. 1.* In considering the letter written by Plaintiff's counsel, the Plan Administrator concluded: "Based on the facts presented in Mr. Rosenberg's letter dated August 25, 1998, therefore, I could have denied Mr. Kolodzaike benefits because the Severance Pay Policy expressly excludes from eligibility those employees terminated for performance issues." Gaither Decl. ¶ 5. Thus, Plaintiff's assertion that the Plan Administrator did not consider information provided by Plaintiff it is not entirely accurate.

5. Plaintiff's allegation that the information provided to the Plan Administrator was "unreliable, biased, and lacked good faith" is without merit. Plaintiff hypothesizes that Ms. Elliott, the individual with whom the Plan Administrator spoke about the reasons for Plaintiff's termination, may have provided false information. As support, Plaintiff notes that Ms. Elliott failed to inform the Plan Administrator that Plaintiff had filed a worker's compensation retaliation action against Occidental prior to the time of his dismissal. Plaintiff argues that such an omission raises a fact question whether Occidental and the plan Administrator acted in "good faith." The Court disagrees with this entire line of reasoning. First, Plaintiff's employment record confirms what Ms. Elliott, the Human Resources Manager for Manufacturing at the Occidental's Pasadena plant, told the Plan Administrator. Second, the Plan Administrator had no duty to investigate Plaintiff's retaliation claims. Third, Plaintiff has presented absolutely no substantive evidence showing that Occidental schemed to fire Plaintiff because he had filed a retaliation suit against the company. Fourth, Plaintiff's speculation does not overcome the fact that the Plan Administrator acted reasonably in denying Plaintiff severance benefits. In the end, Plaintiff has failed to raise any relevant fact issues concerning whether the plan Administrator acted in a capricious or arbitrary manner. Instead, the facts show that at the time Plaintiff's request for benefits was denied, the Plan Administrator could justify her decision. Because evidence exists showing that Plaintiff's claims for ERISA benefits were properly excludable under Occidental's Plan, the Court declines to intervene and to reverse the Plan Administrator's decision.

dard that Plaintiff must overcome to overturn the Administrator's decision, Plaintiff's claims must fail here. *See Southern Farm*, 993 F.2d at 103–04 (holding that a plan administrator's denial of benefits based on the factual determination about a plan participant's cause of death was supported by autopsy report and three medical records, and therefore it was a reasonable decision); *Pierre*, 932 F.2d at 1563. (holding that a plan administrator's denial of benefits based on the factual determination that the plan participant's death was not "accidental" within the terms of the policy was not an abuse of discretion because the determination was supported by the police investigation, private investigation, and conversations with the deceased's wife); *Shelton v. Benefit Plan of Exxon Corp.*, 8 F.Supp.2d 616, 621 (S.D.Tex.1998) (holding that a plan administrator's denial of benefits based on the factual determination that the plan participant was not terminated for his incapacity was reasonable, even if the administrator did not conduct the most thorough investigation possible), *aff'd*, 182 F.3d 915 (5th Cir.1999), *and cert. denied*, —— U.S. ——, 120 S.Ct. 978, 145 L.Ed.2d 929 (2000).

Because Plaintiff does not raise an issue of fact, Defendants' Motion for Summary Judgment must be **GRANTED**. Consequently, all of Plaintiffs' claims are hereby **DISMISSED WITH PREJUDICE**. The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course. **IT IS SO ORDERED.**

### FINAL JUDGMENT

In accordance with the Court's Order Granting Summary Judgment issued on this day, all of Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE**. The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**THIS IS A FINAL JUDGMENT.**